FARM BUREAU MUTUAL INSURANCE COMPANY
OF INDIANA *v.* SEAL, ADMINISTRATOR, ETC.

[No. 19,292. Filed January 24, 1962. Rehearing denied April
26, 1962. Transfer denied February 4, 1963.]

*Lloyd Fitzpatrick, Hasting & Allen,* both of Washington, *Louis A. Savage,* of Jasper, and *Hollowell, Hamill & Price,* of Indianapolis, for appellant.

*Seal & Seal,* of Washington, and *Eldo W. Wood,* of Huntingburg, for appellee.

AX, J.—Appellee's decedent, Dorothy Louise Acton, commenced an action against appellant corporation, Farm Bureau Mutual Insurance Company of Indiana,

for damages allegedly resulting from the fraudulent obtaining of a release of her claim for personal injuries growing out of an automobile accident.

The evidence favorable to appellee substantially shows that on December 31, 1954, Miss Acton (hereinafter called Dorothy) and James R. Dillon (hereinafter called James) spent the evening together celebrating New Year's eve. Early in the morning of January 1, 1955, Dorothy, James and his cousin Charles left the Town of Elnora, Indiana, in a Chevrolet pickup truck and started toward Washington, Indiana. James was driving the truck, which belonged to his father and which was insured by appellant.

Dorothy and James previously had an argument over his drinking. The altercation resulted in a return of an engagement ring given to Dorothy by James. While traveling on Highway #57 from Elnora to Washington, James began driving at such a fast rate of speed that both Dorothy and Charles asked him to slow down. He stopped briefly at a filling station in Washington where he picked up a soldier by the name of James Arnold McGuire with whom some of the young people were acquainted. James again speeded up the truck, after getting outside the city limits of Washington on Highway #50, and by turning the steering wheel back and forth he was zig-zagging the truck down the highway. All three of his passengers asked him to slow down and warned him that he would "wreck them and kill them" if he continued to drive in such a manner. Dorothy became frightened and started crying and begged James to stop the zig-zagging. About three miles out of Washington, while the occupants were still begging the driver to slow down and to stop the zig-zagging, the truck suddenly went off the road on one side,

careened over to the other side and turned over a number of times. Dorothy underwent considerable medical care as a result of injuries sustained in the accident and was hospitalized in the Daviess County Hospital at Washington, Indiana.

After being removed from the hospital to her home in Montgomery, Dorothy was visited by David Lee, a claims adjuster of the appellant insurance corporation. She stated that Lee seemed concerned about her progress and was sympathetic and always asked her how she was feeling. Lee made several visits with Dorothy before they agreed upon a settlement in the sum of $522.05.

Dorothy signed the release in question on June 29, 1955, in consideration of a check for $522.05. She stated that at that time Lee told her that the release was only for her hospital and doctor bills and that she would get something at a later date but that he did not know how much. Lee also told her that if she did not sign the paper she would have to pay her own bills and that he would not be back to see her any more. She stated that she wanted to read the paper but Lee told her it was not necessary; that it was just routine. She also stated that at that time Lee also told her that the doctor and hospital were getting impatient for their money.

It was not until she was ready to endorse the check and read the printed matter thereon that Dorothy first noticed that if she endorsed the check she was signing away all of her claim to personal injury damage. It was then that she first contacted her attorney. However, the check was never cashed.

On March 10, 1956, Dorothy filed her complaint for damages against appellant corporation, alleging fraud

on the part of appellant, and wilful and wanton misconduct on the part of appellant's insured driver, James Dillon.

In her complaint Dorothy charged that the adjuster fraudulently obtained a release of her claim for damages against James by making the following representations:

"A. That the paper he had for [her] to sign was not a release of her right to damages, but it was only to pay the doctor and hospital bills;

B. that the doctor and hospital were getting impatient because their bills had not been paid, and she had to sign this paper so they could get their money;

C. that it wasn't necessary for [her] to read the paper he had, as it was just routine in order to get the doctor and hospital bills paid;

D. that he stated to [her], 'I don't know how much you will receive for your damages, we've got to get the hospital and doctor bills paid up first;'

E. that if [she] did not sign the paper that he had with him on that day and sign it that day [she] . . . would have to pay the doctor and hospital bills herself."

Appellant filed a plea in abatement to the complaint, and a demurrer to the plea in abatement was filed by Dorothy. The court sustained the demurrer and appellant filed an amended plea in abatement, to which Dorothy filed a motion to strike from the files. This motion was sutained. Appellant then filed its motion to strike parts of plaintiff's complaint, which was sustained in part and overruled in part.

Dorothy, by her complaint, alleged that her claim was worth by way of compromise the amount of $65,000.00. Her prayer for damages was for $65,000.00.

Trial was by jury, which returned a verdict in favor of Dorothy, assessing damages in the amount of $40,000.00.

Appellant made a written request for interrogatories to the jury to which the jury answered. Appellant filed a motion for judgment on the answers to the interrogatories, which was overruled. Appellant then filed a motion for new trial. During the interim of the filing of the motion for new trial and the court's ruling thereon Dorothy died. Upon this notice a motion to substitute the administrator of Dorothy's estate was sustained. Thereafter, the motion for new trial was overruled.

Appellant's assignment of error consisted of some twelve causes. However, because appellant only discusses errors 1 and 2 we need only consider those and treat all others as waived.

The two errors argued are:

1. The court erred in overruling appellant's motion for a new trial.

2. The court erred in sustaining the demurrer of appellee to the appellant's plea in abatement, filed September 15, 1956.

We shall discuss the second cause first.

Appellant's plea in abatement in effect alleged that the transaction between the appellant and Dorothy had never been consummated. Appellant argued that Dorothy's action against appellant corporation was premature and subject to abatement. Appellant contended that at the time of the filing of the plea Dorothy still had three and one-half months in which to file her suit for damages against James, since the accident in question occurred on January 1, 1955, and

up to that time she had not been harmed by the signing of the release in question.

The procuring of a settlement of a cause of action by fraud or deceit is no different from any other action for fraud so far as that particular class of actions is concerned. *Automobile Underwriters Inc.* v. *Rich* (1944), 222 Ind. 384, 53 N. E. 2d 775. The essential elements which make up actionable fraud must constitute representations, falsity, scienter, deception and injury. *Automobile Underwriters, Inc.* v. *Smith* (1960), 131 Ind. App. 454, 166 N. E. 2d 341, rehearing denied 167 N. E. 2d 882; *Edwards* v. *Hudson et al.* (1938), 214 Ind. 120, 14 N. E. 2d 705. A right of action exists where a defendant fraudulently misrepresents certain material facts, sufficient enough to induce a plaintiff to make a settlement of his cause of action for a lesser sum that he might have otherwise received had not the fraudulent representation been made. The method of recovery which he may use has been expressed by both this court and the Indiana Supreme Court.

"1. He can tender or return whatever was received and bring suit on the original right of action requesting therein that the settlement be set aside, or he can await the interposing of the settlement in bar of his suit and then set up the fraud and payment in accordance.

2. He can keep what he has received and file suit against the ones perpetrating the fraud and recover such amount as will make the settlement an honest one." *Automobile Underwriters, Inc.* v. *Rich, supra,* at page 384; *Automobile Underwriters* v. *Smith, supra.*

Dorothy had a choice of methods and the fact that she chose to pursue one does not make it error for

failure to pursue the other. The fact that she did not cash the check would not affect her right of action or the method in pursuing it. The cases cited by appellant to show authority to the contrary are not pertinent. The contract was consummated upon the making of the mutual promises. See 61 I. L. E. Contracts, §33, p. 91. The consideration consisted of the promise by Dorothy to forbear from bringing an action against appellant or appellant's insured driver and the promise of appellant to pay Dorothy $522.05. The terms of the contract were contained in the said release. The performance of the contract by appellant was the payment of $522.05. The fraud was alleged to have taken place in the making of the contract and not in its performance. That is, the fraud was consummated the moment Dorothy was induced by fraudulent representations to sign a release of her right of action  The cashing of the check would not have changed the terms of the contract or the fact that a contract was entered into. By returning the check and by filing her complaint Dorothy charged in substance that the check given her was a lesser sum than she would have received had she not been induced to sign the release. She was in effect asking that she be allowed to recover such an amount as would make the settlement an honest one. This we believe she had a right to do. There, there was no reason to abate the action.

Under the first cause of error appellant argues that the damages assessed by the jury are excessive.

It is appellant's contention that in accordance with the prevailing law as announced by the Indiana Supreme Court in the *Rich* case, *supra*, and in accordance with the theory of Dorothy's complaint, the measure of damages must take into consideration the salable value of the right of action for the purpose

of compromising, and the nature and extent of the injuries known and foreseeable as of the time of the settlement, under the particular circumstances of the parties then shown existing.

We believe that there was sufficient evidence from which the jury could have inferred that Lee, the adjuster, had knowledge of the nature and extent of Dorothy's injuries at the time the release was obtained.

The medical testimony given at the trial shows that Dorothy suffered a transverse fracture of the middle shaft of the left clavicle; a linear fracture through the spinus process of the left scapula; an oblique fracture of the right clavicle; a fracture of the third rib in the paravertibral line; a transverse fracture of the second rib in the anterior axillary line with overriding; a fracture of the third rib in the anterior axillary line on the left; a fracture of the left fourth rib; a fracture of the left fifth rib; a fracture of the left sixth rib; a fracture of the left seventh rib; an oblique fracture of the right elbow through the ulna end of the coronoid process of the ulna; a fracture of the laterial condule of the humerus. There was evidence that Dorothy suffered great pain throughout the process of repairing her body. In repairing the collar bone it was necessary to drill through the center of the bone and insert a metal rod in order that she might move around some in bed. Along with other factors to which there was testimony was the fact that she suffered much pain such as from the process used in draining fluids and blood from her lungs, and she was kept drugged with narcotics in order to alleviate her pain.

The medical testimony showed that Dorothy was 100% disabled (insofar as performing physical labor was concerned).

It was for the jury and not this Court to make a determination as to what value to place on more than a dozen broken bones, cuts, bruises and abrasions, damages to a lung, damage to a heart, the pain and suffering induced at the time of the accident, as well as the long convalescence following. According to the evidence Dorothy was 21 years of age at the time of the accident, and she had a life expectancy of 41.53 years.

It has often been said by this Court that we read only the cold typewritten pages of the proceedings which transpire in the trial court below. The pages of that record must demonstrate that in order to sustain reversal the damages assessed must be so outrageous and so grossly excessive as to induce the belief that the jury acted from partiality, prejudice, corruption or other improper motives. *Chicago & Calumet District Transit Co.* v. *Stravatzakes* (1959), 129 Ind. App. 337, 156 N. E. 2d 902. *Highshew* v. *Kushto* (1956), 126 Ind. App. 584, 131 N. E. 2d 652. Rehearing denied 133 N. E. 2d 76. Transfer denied 134 N. E. 2d 555. Though the record here on appeal in the instant case may be somewhat dispassionate, it does however contain sufficient evidence to cause this Court to be of the opinion that $40,000.00 can hardly be considered excessive. It is only necessary that the evidence show that the injuries are commensurate with the damages awarded. *Jones et al.* v. *Cary* (1941), 219 Ind. 268, 37 N. E. 2d 944.

Appellant has urged that the evidence was insufficient to support the verdict and that the verdict is consequently contrary to law.

The primary issue in this case is whether appellant's agent fraudulently secured a release of claim for damages arising out of personal injuries received by appellee's decedent. Appellant argues that the statements made by the adjuster Lee were mere opinions and predictions. Appellant again relies upon the *Rich* case, *supra*, in support of its contention. That case, insofar as this point is concerned, is not in point. The situation in the *Rich* case is materially different from the facts in the instant case. In the *Rich* case the plaintiff *knew* she was signing a release. In the instant case as is admitted by appellant, the facts most favorable to appellee show that the adjuster informed Dorothy that she was to sign the paper in order that the doctor and hospital bills could be paid, when in fact the paper was a release of her claim against appellant and appellant's insured driver Dillon. Appellant contends that such statement "was at worst, a misrepresentation of the effect of a written instrument." Appellant's defense for such a bold admission seems predicated upon the ground that the evidence demonstrated that Dorothy could read and by failing to read the release in question she should not be heard to complain. The rule propounded by appellant cannot be taken as an entirely correct statement of the law. Such a proposition can only be accepted after certain qualifications are made.

It has been said that:

". . . if one knowingly misrepresents the contents of a writing or if the fact is established that the signee was lulled by fraud and deceit into omitting to read the document for himself a charge of fraud is maintainable in an action upon it in the hands of one who, or whose agent misrepresented the contents of the document." See 23 Am. Jur. Fraud and Deceit, §96, p. 874; 12 Am. Jur. Contracts, §145, p. 637.

Merely because the release in question was in writing and contained a warning—"CAUTION! READ BEFORE SIGNING,"—is no reason for assuming that a fraud could not be perpetrated in obtaining a signature on the same. Nor can it be assumed that the warning will work as an absolute defense (or guaranty) against all liability. Fraud has always been the exception. The law is designed

" . . . to protect the weak and credulous from the wiles and stratagems of the artful and cunning, as well as those whose negligence and sagacity enable them to protect themselves." *Culley* v. *Jones et al.* (1905), 164 Ind. 168, 176, 72 N. E. 94. See also *Automobile Underwriters, Inc.* v. *Smith, supra.*

There is evidence to support appellee's contention that while Dorothy was still recuperating appellant's adjuster came to visit her; that several friendly and sympathetic visits took place before any mention was made pertaining to the payment of money. Visiting the sick or injured and extending a sympathetic hand is a commendable practice unless the same is tainted with fraudulent motives. This Court is of the opinion that there was sufficient evidence to demonstrate that appellee's decedent was lulled by fraud and deceit into believing that it was not necessary to read the instrument to which she placed her name.

Dorothy charged that appellant's adjuster, in order to induce her to sign a paper which he contended was only to get the hospital and doctor bills paid, stated that he did not know how much she would receive for her damages and that someone else would be back to "see her about that."

At the time that the alleged statements were made by the adjuster Lee, the evidence shows that he actually had in his possession the release in question and the check for $522.05. To knowingly misstate the contents of a writing and to purposely misstate facts which would cause the signing of the same is fraud.

> "It has . . . been held in this state, that, when one person designedly and knowingly causes a false impression or belief to be entertained by another, and the latter is thereby induced to make a contract injurious to his best interests, such a contract is so impressed with fraud that the courts will set it aside." *Fletcher Trust Co.* v. *Hauser* (1937), 105 Ind. App. 281, 298, 11 N. E. 2d 1012.

We believe that there was sufficient evidence from which the jury properly could have determined that appellant, acting through its agent, Lee, fraudulently obtained the release from Dorothy.

It is argued by appellant that the court erred in refusing to admit into evidence appellant's Exhibit B, which was a series of interrogatories and answers wherein appellant's attorney questioned Dorothy concerning the accident. Appellant argued that on January 7, 1955, some six or seven days after the accident occurred, Mr. Fitzpatrick, attorney for appellant corporation, and Irene Kinder, a stenographer employed by appellant, visited Dorothy while she was confined to her hospital bed and allegedly took a statement from her. The statement is in the form of interrogatories and answers. Appellant contends the questions and answers were taken down in shorthand by Mrs. Kinder and later transcribed by her into typewritten form.

Mrs. Kinder was called to the stand, identified appellant's Exhibit "B" and attempted to read therefrom. This was refused. Appellant then asked the witness to relate what was said and done on the occasion of that visit to the hospital. An objection to the question was sustained. Appellant then proceeded to ask the witness what was said by Dorothy about the accident in question on the occasion of that visit to the hospital. An objection to the question was sustained. Appellant's offer to prove was that the witness, Irene Kinder, would have stated that Dorothy Louise Acton did state that she had no reason to complain about Dillon's driving that night and that he had always been a good driver.

Near the close of appellant's evidence Mrs. Kinder was again called to the stand whereupon appellant made its last attempt to have the alleged statement admitted. The court again refused to allow Mrs. Kinder to answer appellant's question, stating that

" . . . the question is ruled out of order for the reason that the plaintiff, Dorothy Louise Acton, did not deny that she made such statement."

The court's ruling was correct. Appellant's offer of the evidence was for impeachment purposes. ▪ This fact is particularly borne out by appellant's question wherein its attorney asked:

"Q. Mrs. Kinder, going back to January 7, 1955, at the time of the taking of the statement in the Daviess County Hospital, in writing, by you, which statement was given by the plaintiff, Dorothy Louise Acton, *about which you have testified having taken yourself, for the purpose of impeaching testimony of Miss Acton,* previously given in this case, state whether or not she made any remark or com-

ment about the manner in which James R. Dillon drove on the night of the accident in question"? (Our emphasis.)

It has been held by this Court and the Supreme Court of this state that contradictory statements made by a witness can be proved, but in order to do so a proper foundation must be laid. The witness' attention must be called to the time and place of making the statements and the substance of the statement made. It is essential for purposes of impeachment that the witness deny making the statement. See *Doe on the Demise of Sutton* v. *Reagan and others* (1839), 5 Blackford 217, 33 Am. Dec. 466; *Joy* v. *The State* (1860), 14 Ind. 139; *Judy and Another* v. *Johnson* (1861), 16 Ind. 371; *Bennett* v. *O'Byrne and Another* (1864), 23 Ind. 604; *Hill et al.* v. *Gust by his next friend Gust* (1876), 55 Ind. 45; *Famous Mfg. Co.* v. *Harmon* (1901), 28 Ind. App. 117, 62 N. E. 306. If the witness answers that she does not recall ever having made the statement ". . . the party thus laying the foundation for impeachment shall have the right to introduce evidence of the act or statement in the same manner as if the witness had answered that he had not done the act or made the statement." §2-1727, Burns' 1946 Replacement [Acts 1881 (Spec. Sess.), ch. 38, §286, p. 240.] See also *Curme, Dunn & Co. et al.* v. *Rauh et al.* (1884), 100 Ind. 247.

Appellant in its attempt to lay a proper foundation asked Dorothy on cross-examination whether, on January 7, 1955, while she was in the Daviess County Hospital, in the presence of Mrs. Irene Kinder, in answer to the question "Had you had reason to complain about how Jimmy was driving"? she stated "No, he has always been a good driver, it was sort of a

bad night I think." Dorothy replied in the following manner:

"A. I don't ever remember seeing Miss or Mrs. Kinder."

This answer can hardly be considered as a denial of making the alleged statement, nor could it be considered to imply a denial. In fact, the answer was not responsive to the question. She neither denied making the statement nor did she recall making such a statement. Her answer was that she did not recall seeing Mrs. Kinder. It is entirely possible, in light of the medical testimony given, that she did not see Mrs. Kinder. With respect to the statement taken and the circumstances involved it becomes apparent that the rules governing admissibility of this type of evidence should not be relaxed. Failure to get a denial or answer from Dorothy that she did not recall the statement was a failure to lay a proper foundation. Without a proper foundation the statement was not admissible for impeachment purposes. It is a well-founded rule of law that the lower court can exclude evidence. Even though that evidence may be admissible for one purpose, it would not be admissible for the purpose for which it was offered. *Shilling et al.* v. *Varner et al.* (1913), 181 Ind. 381, 103 N. E. 404; *Jeffersonville, Madison & Indianapolis Railroad Co.* v. *Riley* (1872), 39 Ind. 568.

Appellant claims error for failure of the court to allow certain testimony of other witnesses to be ad-

mitted into evidence with respect to similar transactions as transpired between Dorothy and appellant's agents. The admission of evidence of similar acts or transactions as proof that a particular act was done lies generally with the discretion of the trial court. *Hufford, Administrator* v. *Neher* (1896), 15 Ind. App. 396, 44 N. E. 61; *Evansville & Terre Haute Railroad Company* v. *Keith* (1893), 8 Ind. App. 57, 35 N. E. 296; *Hitchens* v. *Ricketts* (1862), 17 Ind. 625. Unless there has been an abuse of that discretion this Court will not reverse on that point alone. See *Miller et al.* v. *Dill et al.* (1898), 149 Ind. 326, 335, 49 N. E. 272.

Appellant offered its evidence to show similar acts of fair dealings, while in the cases cited by appellant the evidence was being offered to show similar acts of fraud and deceit. See *Miller et al.* v. *Dill et al.* (1898), 149 Ind. 326, 49 N. E. 272; *Parrish* v. *Thurston* (1882), 87 Ind. 437; *Hoffman et al.* v. *Henderson* (1896), 145 Ind. 613, 44 N. E. 629. If the evidence was admissible, appellant has failed to show that it was harmed by the lower court's action.

Appellant also urges that the court erred in giving to the jury plaintiff's tendered instruction Number 6 over objection timely made by the appellant. It is argued by appellant that the instruction was not applicable to the issues in the instant case.

This instruction charged that should the jury find from a preponderance of evidence that Dillon was driving at a high and excessive rate of speed under dangerous conditions, and that Dorothy as well as the other passengers protested, and that Dillon began to drive more carefully and that he stopped the car, then Dorothy would not be bound to anticipate the resumption of dangerous driving nor

would she be charged with having assumed the risk involved. This is an accepted rule of law. *Ridgway* v. *Yenny* (1944), 223 Ind. 16, p. 23, 57 N. E. 2d 581. There was testimony from the passengers of the vehicle to sustain the giving of the instruction. There existed in this case the issue of wilful and wanton misconduct. The instruction corresponded with the issue in this case; therefore, it is our opinion that appellant's position is unfounded.

Appellant argues that the court erred in giving plaintiff's tendered instruction Number 12.

Appellant argues that the instruction does not properly state the measure of damages in this type of case. Appellant submits instead that its instruction Number 29, which was refused by the court, is a correct statement of the measure of damages. Instruction Number 29 may be correct insofar as it goes, but it does not give the jury a method or means for measuring the value. *Automobile Underwriters* v. *Rich, supra.*

If the appellant was of the position that the jury should take into consideration certain facts with respect to damages, then it was appellant's duty to submit an instruction which would specifically warn the jury of these facts. Having failed to do so, appellant cannot be heard to complain. *Cleveland, etc. R. Co.* v. *Clark* (1912), 51 Ind. App. 392, 417, 97 N. E. 822.

It is appellant's further contention that the lower court erred in refusing to give to the jury appellant's tendered instructions numbered 1, 9, 10, 12, 15, 16, 17, 20, 23, 26 and 29. This Court has carefully examined these said instructions and find that the matters contained therein were ade-

quately covered by the instructions given by the court. A great number of the above mentioned instructions tendered by appellant but refused by the court were merely repetitions of other instructions tendered by appellant and given by the court. The lower court is not obliged to instruct the jury more than once on any particular matter. See *Robbins* v. *Fugit* (1920), 189 Ind. 165, 126 N. E. 321; *Vandalia Coal Co.* v. *Yemm* (1910), 175 Ind. 524, 92 N. E. 49; *Baum* v. *Palmer* (1905), 165 Ind. 513, 76 N. E. 108.

Appellant has relied quite strongly upon the *Rich* case in support of the alleged actions of the adjuster Lee. It is this Court's opinion, however, that the opinion of the *Rich* case was not intended to be interpreted or used as a protective shield by insurance adjusters in adjusting their claims. We cannot bring ourselves to believe that the court in deciding the *Rich* case, or any other court, could condone the alleged tactics used by Lee in securing the above questioned release.

The evidence presented in this case supports the jury's verdict and the law supports the court's ruling on the motion for new trial. Therefore, the decision of the lower court must be affirmed.

Judgment affirmed.

Ryan, C. J., and Myers, J., concur.

Cooper, J., concurs in result only.

NOTE.—Reported in 179 N. E. 2d 760. Transfer denied in which Achor, J., dissents; Arterburn, J., Myers, J., not participating.