EDGAR C. ENGELBRECHT *v*. TRI-STATE FRANCHISERS, INCORPORATED ET AL.

[No. 372A128. Filed September 28, 1972.]

*Frick, Powell & Miller*, of Evansville, for appellant.

*Early, Arnold & Ziemer*, of Evansville, for appellees.

LYBROOK, J.—This appeal arises from a decision favorable to defendant-appellee, Property Developers, Inc. (PDI) in a declaratory judgment action brought by plaintiff-appellant (Engelbrecht).

Engelbrecht brought suit to determine ownership of stock in five corporations which were joined as party defendants. PDI contended, and the trial court found, that PDI was the owner of the stock.

PDI argues in its answer brief that Engelbrecht's brief fails to comply with the Appellate Rules and that the appeal should be dismissed.

Engelbrecht has properly petitioned this court, pursuant to Appellate Rule 8.4(A), to amend his brief. The brief as amended substantially complies with the rules. Therefore, we will consider this case on its merits.

Engelbrecht alleges two errors: (1) Insufficient evidence and (2) The decision was contrary to law insofar as it held that Engelbrecht had no stock ownership in the five corporations. Both contentions revolve around sufficiency of the evidence and will therefore be discussed together.

This Court has repeatedly stated that it can neither weigh evidence nor determine the credibility of witnesses. On appeal we must consider only the evidence most favorable to the appellee. *Rudd* v. *Anderson* (1972), 152 Ind. App. 11, 285 N. E. 2d 836 ; *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N. E. 2d 669; *Wm. J. & M. S. Vesey, Inc.* v. *Hillman* (1972), 151 Ind. App. 388, 280 N. E. 2d 88.

The trial court made several specific findings of fact. A careful review of the record discloses evidence to support each of them. Those which support the judgment are:

"1. From 1965 through December 31, 1969, the plaintiff, Edgar C. Engelbrecht, was employed by the defendant, Property Developers, Inc.

2. In 1967, the defendant, Property Developers, Inc., agreed to purchase 105 shares of the 180 shares of capital stock in each of the corporations formed or to

be formed in connection with the operation of the Bonanza Steakhouses in Evansville and Bloomington, Indiana, and thereafter the plaintiff, Edgar C. Engelbrecht, acted for and on behalf of the defendant, Property Developers, Inc."

\* \* \*

"9. That prior to the agreement by Property Developers, Inc., described in paragraph 2 above, Eugene E. Brinker, Willard H. Damm, William P. Detroy, Charles E. Hopkins, and William von der Lieth, being the original subscribers to the capital stock of Tri-State Franchisers, Incorporated and Bloomington Steak House, Incorporated, agreed with the plaintiff, Edgar C. Engelbrecht, that is [sic] exchange for services to be performed by him, he should receive without cost 25% of the capital stock of Tri-State Franchisers, Incorporated, Bloomington Steak House, Incorporated, and Evansville Steak House East, Inc.

10. That the services of the plaintiff, Edgar C. Engelbrecht, pursuant to said agreement were performed by him while he was employed by the defendant, Property Developers, Inc.

11. That pursuant to said agreement, there was issued stock to the plaintiff, Edgar C. Engelbrecht, in each of said companies and certificates for said stock were delivered to him, which are described by company, number of shares, and date as follows:

| | | |
|---|---|---|
| Tri-State Franchisers, Incorporated | April 3, 1967 | 25 shares |
| Tri-State Franchisers, Incorporated | October 26, 1967 | 20 shares |
| Bloomington Steak House, Incorporated | April 3, 1967 | 25 shares |
| Bloomington Steak House, Incorporated | October 26, 1967 | 20 shares |

12. Under date of July 26, 1968, the plaintiff, Edgar C. Engelbrecht, transferred and assigned the above-described 45 shares of the capital stock of Tri-State Franchisers, Incorporated to the defendant, Property Developers, Inc.

13. Under date of July 26, 1968, the plaintiff Edgar C. Engelbrecht, transferred and assigned the above described 45 shares of the capital stock of Bloomington

Steak House, Incorporated to the defendant, Property Developers, Inc."

\* \* \*

"20. No stock certificates have been issued to any stockholders by Evansville Steak House East, Inc., By-Pass 46 Steak House, Inc., and North Steak Pit, Inc."

\* \* \*

"26. The agreement among Eugene E. Brinker, Willard H. Damm, William P. Detroy, Edgar C. Engelbrecht, Charles E. Hopkins, William von der Lieth, and Tri-State Franchisers, Incorporated relating to the capital stock of Tri-State Franchisers, Incorporated, and Bloomington Steak House, Incorporated was not executed by William von der Lieth nor by Bloomington Steak House, Incorporated."

The court thereupon held ownership of the stock to be in Property Developers, Inc.

The ultimate facts to be determined are whether Engelbrecht was an employee of PDI and whether there was an agreement that any stock he received be transferred to PDI as a condition of his employment.

There was evidence to answer each of the above questions in the affirmative. Frank Donner, Merchants National Bank Trust Officer, managed the Traylor trusts which were concerned with certain financing of the steak houses. Donner also acted as a director of PDI through which the financing was channeled. He testified:

"Q. Why did you require that the stock be given to you?
A. It was my understanding that this was the investment that PDI and/or Mr. Traylor had in the Bonanzas Corporations and as a result we had this available either to put in PDI for its consideration that had been furnished or into the Trust in reduction of the loans that had been advanced from the Trust to PDI.

Q. Where did you get this understanding?
A. I got it from Mr. Traylor and Mr. Engelbrecht, I didn't think there was any disagreement ever."

\* \* \*

"Q. Did the Trust ever give any money or furnish money to Mr. Engelbrecht in return for his assignment of his stock to PDI?

A. No.

Q. Did PDI to your knowledge?

A. If it was in direct compensation for his stock, no I think it was done on the basis that he was an employee of PDI.

Q. Then the answer is no? So far as you know PDI never paid him for the stock.

A. They paid him a salary.

Q. How do you know it was a salary? You don't know that do you Mr. Donner? Aren't you just volunteering that little bit of help?

A. I understood he had a compensation of $18,000.00 (interrupted).

Q. From whom did you understand that?

A. From the information that has been testified to here before and from the records that I have seen."

Ferris Traylor testified:

"Q. What was the nature of the relationship that developed between you? [and Engelbrecht]

A. He came to me with an idea for me to finance a real estate operation and I had some ideas along the same lines about investment of the childrens funds and that developed and compilation of those ideas and my discussions with Mr. Donner it developed into Property Developers."

\* \* \*

"Q. What was his position with Property Developers?

A. He was at that time president and chief executive officer.

Q. What was the arrangement [sic] you had with him for remuneration for his services?

A. Salary, expenses, fringe benefits such as Park Country Club dues, insurance, everything that goes along with corporate positions.

Q. Was this salary contingent in any way upon his achieving any particular results?

A. No."

\* \* \*

"Q. On what basis did you agree to go into it?

A. I told him we would go in as the majority stockholders and the operators only. He had some other investors he had been talking to for quite some time as I remember."

\* \* \*

"Q. Were you aware that Mr. Engelbrecht had stock in Tri-State Franchisers and Bloomington Steak House registered in his name?

A. Yes.

Q. And was stock issued and registered in your individual name?

A. Yes, by agreement with Mr. Engelbrecht.

Q. And what was that agreement?

A. That we would only be agents for the stock for a temporary period of time and would transfer it to Property Developers at no loss or gain to ourselves.

Q. And was that the same agreement to apply as the other three corporations were formed?

A. Yes. I had a thorough understanding with Mr. Engelbrecht when he went to work with Property Developers and we talked about it many times that no official of the company was to profit on an individual basis and he reiterated that and assured me that he would only think in those terms."

\* \* \*

"Q. I believe you testified that Mr. Engelbrecht agreed to transfer of the stock in his name in these corporations to Property Developers?

A. Yes.

Q. When did he agree to that?

A. Well I really wasn't aware of the detail of the problem until I got the letter from Donner that was introduced here into evidence with Mr. Engelbrecht's signature was on and I didn't get back into it with both feet then because prior to then he had a broad understanding with me that there wouldn't be any of this conflict of interest of any employee and I called both he and Mrs. McKinley in then when I got the letter and was pretty firm about it and they both assured me and at later dates assured me that Property Developers was a majority stock holder of all these corporations."

\* \* \*

"Q. Did you know that Mr. Engelbrecht had an understanding with the doctor investing group that he was to get 25% of the equity for his promotional efforts?

A. Not only knew it, I also knew he assigned it to PDI or we weren't going any further with it. He agreed to assign it to PDI.

Q. He agreed to assign it to PDI from the very beginning?

A. Right. I had athorough [sic] understanding with him in my office, that was the only basis that we were going into any corporate maneuvers. We had two million dolars [sic] up in cash and Mr. Engelbrecht just had a job and I wasn't about to get in a conflict of interest position with the president of a company."

We are faced with the typical situation of evidence in conflict. A determination was made by an able trial judge and there was evidence to support his judgment. We can not substitute our judgment for his.

Judgment affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported in 287 N. E. 2d 365.