ILLINOIS VALLEY ACCEPTANCE CORP. *v.* ROBERT WOODARD.

[No. 1-673A120. Filed December 26, 1973. Rehearing denied January 31, 1974.]

*John C. Kite, Beecher & Kite,* of Terre Haute, for appellant.

*Jack N. Cochran,* of Sullivan, *Dix, Patrick, Ratcliffe & Adamson,* of Terre Haute, for appellee.

ROBERTSON, P.J.—The plaintiff-appellant (Acceptance) is appealing the denial of its attempt to collect upon a trade acceptance made by the defendant-appellee (Woodard). The primal issue raised concerns Acceptance's status as a holder in due course of a negotiable instrument.

Woodard was a part time salesman for Moody Manufacturing Company (Moody), a manufacturer of grain bins and grain handling equipment. In May of 1966, Moody, as "borrower", had entered into a Finance Agreement with Acceptance listed as "the lender". This agreement made provision, among other things, for Moody to sell acceptable accounts to Acceptance for face value with 15% being reserved for deductions, expenses, accumulated interest, etc. On the 24th of December, 1968, Woodard signed, as acceptor, the trade acceptance which is the subject of this litigation. Moody was the drawer and payee. At that time it was in blank with the face value subsequently being filled in for the face amount of $8,815.62. In the four or five years prior to 1968, Woodard had signed several trade acceptances in blank for Moody for the purposes of covering the purchase of materials which he sold. The face amount was ultimately to be filled in

when it was determined how much he had ordered. The December, 1968, trade acceptance was endorsed by Moody's secretary and given to Acceptance several days after Woodard had signed it. Between February and April, 1970, and several months past the due date, Moody went bankrupt. When Acceptance presented the instrument for payment it was refused by Woodard. Additionally, Woodard never received the materials represented by the trade acceptance, nor was he aware it had been negotiated by Moody to Acceptance.

Acceptance filed its complaint for collection of the trade acceptance against Woodard. Those paragraphs of answer filed by Woodard which are pertinent to this appeal included a general denial and raised the defenses of fraud and want of consideration. Acceptance filed a response alleging itself to be a holder in due course, which would defeat Woodard's professed defenses. Acceptance then filed a motion for summary judgment with an affidavit made by the vice-president of Acceptance in support thereof. The pertinent parts of the affidavit read:

"4. That since May 17, 1966, Illinois Valley Acceptance Corp. would periodically purchase from Moody Manufacturing Company trade acceptances, promissory notes or other negotiable instruments.

5. That on or about December 26, 1968, Illinois Valley Acceptance Corp., for the cash consideration of Seven Thousand Four Hundred Ninety-three Dollars and Twenty-Eight Cents ($7,493.28), purchased from Moody Manufacturing Company a certain trade acceptance shown as 'No. Inv. #302', dated December 24, 1968, due November 30, 1969 and accepted on December 24, 1968 by ROBERT WOODARD, the same being payable at PEOPLES STATE BANK, Fairbanks, Indiana. That Affiant is informed and believes that a true and correct copy of the foregoing trade acceptance was attached to the Complaint in this cause, marked 'Exhibit A', and appears in the Court record hereof.

6. That prior to the time Illinois Valley Acceptance Corp. purchased said trade acceptance, the trade acceptance was endorsed by K. C. DODSON, secretary of Moody Manufacturing Company and that your Affiant was and is well

familiar with the signature of K. C. DODSON, having had occasion to observe his signature on numerous times prior and subsequent thereto, and that this Affiant verily believes the signature appearing on the reverse of said trade acceptance to be that of K. C. DODSON, and that further the said K. C. DODSON has continuously, over the many years during which Illinois Valley Acceptance Corp. dealt with Moody Manufacturing Company, acted on behalf of Moody Manufacturing Company and further acted with all authority to sign on behalf of Moody Manufacturing Company, and that during the entire time Moody Manufacturing Company has never repudiated the authority of K. C. DODSON to sign on behalf of that Company, nor have they denied directly or indirectly that he was not so authorized to sign. That prior to the trade acceptance, dated December 24, 1968, Illinois Valley Acceptance Corp. had purchased from Moody Manufacturing Company approximately sixteen (16) trade acceptances, all accepted by ROBERT WOODARD, all purchased prior to maturity, and all paid at maturity or shortly thereafter, such previous trade acceptances are as follows: During February, 1967, two (2) acceptances; during November, 1967, six (6) acceptances; during December, 1967, seven (7) acceptances; during July, 1968, one (1) acceptance.

7. That on December 26, 1968, Affiant knew of no reason or fact which would indicate to him that the trade acceptance attached to the Complaint in this cause was anything other than a valid and enforceable trade acceptance, issued by Moody Manufacturing Company, and accepted by ROBERT WOODARD in the ordinary course and scope of their respective businesses, and that same was a valid, legitimate and enforceable negotiable instrument."

The affidavit concluded with statements to the effect that the trade acceptance had been refused and that Acceptance was the lawful owner and holder of the trade acceptance.

Woodard filed no response. The trial court overruled the motion for summary judgment and some time thereafter proceeded to trial with subsequent judgment against Acceptance. Acceptance's overruled motion to correct errors raises two issues; whether the trial court erred in overruling its motion for summary judgment, and whether the judgment

is contrary to the evidence and the law.[1] As previously indicated, the answer to both is tied to Acceptance's classification as a holder in due course of the questioned trade acceptance.

The thrust of Acceptance's argument, as it applies to the denial of summary judgment, is that the failure of Woodard to file counter-affidavits, etc., entitles Acceptance to the summary judgment. Reliance is placed upon the following taken from TR. 56(E), which states:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegation or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Additionally, we are directed to *Kapusta* v. *DePuy Mfg. Co., Inc.* (1967), 141 Ind. App. 479, 229 N.E.2d 828, for the proposition that one who relies solely upon his pleadings should have summary judgment entered against him.

We are of the opinion that the position taken by Acceptance is incorrect because it fails to take into account the role of the trial judge in determining whether there is a genuine issue of material fact. TR. 56(E) specifies that summary judgment shall be granted *"if appropriate"*. (Our emphasis). The original *Kapusta* v. *DePuy Mfg. Co., supra,* was corrected on transfer to prevent any impression that the granting of a summary judgment was automatic in the absence of counter-affidavits or other documents. See *Kapusta* v. *DePuy Mfg. Co., Inc.* (1968), 249 Ind. 679, 234 N.E.2d 487. Moreover, TR. 56(C) states:

---

1. Illinois Valley's assignment of error that the judgment is contrary to the evidence gives us nothing to review. A negative judgment cannot be challenged as being contrary to the evidence by the party having the burden of proof. *Farm Bureau Ins. Co.* v. *Adams* (1969), 145 Ind. App. 516, 251 N.E.2d 696.

"Summary judgment shall not be granted as of course because the opposing party fails to offer opposing affidavits or evidence, but the court shall make its determination from the affidavits and testimony offered upon the matters placed in issue by the pleadings or such evidence."

See also: *McNabb* v. *Mason* (1970), 148 Ind. App. 233, 264 N.E.2d 623. Furthermore, as shall be discussed later, certain types of fraud may be valid defense to the collection of a negotiable instrument by a holder in due course while other species may not be operative as a defense. The partial transcript before us does not include Woodard's pleadings setting up the purported fraud so we are unable, with any degree of exactitude, to determine what type of fraud Woodard relied upon for his defense. We cannot, therefore, say as a matter of law that the trial court erred in denying the motion for summary judgment.

This case is to be decided under the provisions of the Uniform Commercial Code as enacted by the legislature and codified in IC 1971, 26-1-1-101 *et seq.*, Ind. Ann. Stat. § 19-1-101 *et seq.*, (Burns 1964). It provides that only a holder can recover on the instrument. The applicable section reads:

"(2) When signatures are admitted or established, production of the instrument entitles the holder to recover on it unless the defendant establishes a defense." IC 1971, 26-1-3-307, Ind. Ann. Stat. § 19-3-307 (Burns 1964)

Acceptance's acknowledged status as a holder was not sufficient for it to recover because Woodard raised the defenses of fraud and failure of consideration, each a valid defense under IC 1971, 26-1-3-306, Ind. Ann. Stat. § 19-3-306 (Burns 1964). These defenses, however, may have been cut off if Acceptance was a holder in due course. The holder in due course takes the instrument "free from all defenses of any party to the instrument with whom the holder has not dealt," subject to several exceptions. IC 1971, 26-1-3-305 (2), Ind. Ann. Stat. § 19-3-305 (2) (Burns 1964). To avail itself of this "super-plaintiff" status, Acceptance had the burden of establishing by a preponderance of the evidence that it was

"in all respects a holder in due course." IC 1971, 26-1-3-307 (3), Ind. Ann. Stat. § 19-3-307(3) (Burns 1964). "In all respects" means that Acceptance had to establish the existence of each of the elements set forth in IC 1971, 26-1-3-302, Ind. Ann. Stat. § 19-3-302 (Burns 1964). It provides:

"(1) A holder in due course is a holder who takes the instrument
(a) for value; and
(b) in good faith; and
(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

The evidence, when examined with the foregoing requisites in mind, establishes Acceptance as a holder in due course. Briefly summarized that evidence shows the trade acceptance being endorsed over to Acceptance by Moody. Moody in turn received a draft for 85% of the face value of the trade acceptance. There was nothing irregular with the appearance of the trade acceptance and the transaction was similar to other prior transactions between the parties. At that time Acceptance had no knowledge that the trade acceptance had been signed in blank and that the goods had not been delivered.

A portion of Woodard's arguments appears to be directed to the questions of good faith and notice. Both are statutorily defined:

"(19) 'Good faith' means honesty in fact in the conduct or transaction concerned." IC 1971, 26-1-1-201, Ind. Ann. Stat. § 19-1-201 (Burns 1964)

Notice, insofar as applicable, is defined as:

"(1) The purchaser has notice of a claim or defense if
(a) the instrument is so incomplete, bears such visible evidence of forgery or alteration, or is otherwise so irregular as to call into question its validity, terms or ownership or to create an ambiguity as to the party to pay; or
(b) the purchaser has notice that the obligation of any party is voidable in whole or in part, or that all parties

have been discharged." IC 1971, 26-1-3-304, Ind. Ann. Stat. § 19-3-304 (Burns 1964)

The gist of Woodard's cross examination of Acceptance's vice-president was directed to when Acceptance became aware of Moody's bankruptcy and to the Finance Agreement between Moody and Acceptance. We believe that the bankruptcy has no relevancy because of its nonexistence at the time the trade acceptance was endorsed over to Acceptance. The Finance Agreement, introduced into evidence by Woodard, may have been an attempt to establish something akin to the doctrine of close connectedness,[2] characterized by Woodard as the lack of an arms-length transaction, for the purpose of showing that Acceptance was so closely related to Moody commercially that it knew, or should have known, either Moody was in poor financial shape or that it had not delivered the goods represented by the trade acceptance. Acceptance's summary judgment affidavit as well as the testimony given at the trial belies such a relationship.

Woodard further argues that there was no value given for the trade acceptance and that the Finance Agreement between Moody and Acceptance was merely a borrowing agreement. The evidence shows that Acceptance paid Moody 85% of the face value of trade acceptance and held the remainder in reserve. There can be little question that the value concept was satisfied. See IC 1971, 26-1-3-303, Ind. Ann. Stat. § 19-3-303 (Burns 1964). Nor does the designation of the Finance Agreement as a borrowing arrangement standing alone serve to frustrate the taking of value. The issuance of the draft by Acceptance and the holding in reserve of the remaining 15% eliminates any question regarding unused credit.

Woodard also argues that Acceptance failed to show the instrument was negotiated because the evidence is in conflict as to whether there was delivery of the instrument. Delivery is an element required by IC 1971, 26-1-3-202, Ind. Ann. Stat. § 19-3-202 (Burns 1964), and is

---

2.  See: *Unico* v. *Owen* (1967), 50 N.J. 101, 232 A.2d 405.

defined as a voluntary transfer of possession. IC 1971, 26-1-1-201(14), Ind. Ann. Stat. § 19-1-201(14) (Burns 1964). We fail to find any conflicting evidence on delivery of the trade acceptance from Moody to Acceptance.

Woodard's affirmative defense of want of consideration is not available against a holder in due course. IC 1971, 26-1-3-305, -408, Ind. Ann. Stat. § 19-3-305, -408 (Burns 1964).

Turning next to the question of fraud IC 1971, 26-1-3-305(2)(c), Ind. Ann. Stat. § 19-3-305(2)(c) (Burns 1964) allows a defense against a holder in due course based upon "such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." The comments subsequent to this statute state that fraud in the essence or fraud in the factum is a valid defense against a holder in due course with the theory being that the "signature is ineffective because he did not intend to sign such an instrument at all." Woodard's past conduct in signing blank trade acceptances for Moody negates a defense based on the foregoing. Woodard testified he was familiar with the forms and knew they constituted a promise to pay.

In determining whether a verdict is contrary to the law the proper rule is:

". . . only where the evidence is without conflict and can lead to but one conclusion, and the trial court has reached an opposite conclusion, that the decision of the trial court will be set aside on the ground that it is contrary to law." *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523 at 532, 104 N.E.2d 669.

It is our conclusion that the evidence conclusively demonstrated Acceptance to be a holder in due course. We, accordingly, reverse and remand for judgment to be entered for the plaintiff-appellant Illinois Valley Acceptance Corp., and against the defendant-appellee Robert Woodard.

Reversed and remanded.

Hoffman, C.J., and Lybrook, J., concur.

NOTE.—Reported at 304 N.E.2d 859.