MIDDELKAMP ET AL. *v.* HANEWICH ET AL.

[No. 1269A233. Filed October 20, 1970.]

*Nelson G. Grills,* of Indianapolis, *Dale W. Schwanke,* of Demotte, for appellants.

*Cope J. Hanley, Thomas B. Dumas, William J. Moriarity, Jr.,* of Rensselaer, for appellees.

HOFFMAN, P.J.—This appeal arises from an action commenced by plaintiffs-appellants for the rescission of a warranty deed, plaintiffs alleging fraud on the part of defendants-Hanewichs in inducing the transfer of title by plaintiffs to defendants. The trial court, without a jury, sustained motions for judgment made by each of the defendants-appellees at the close of plaintiffs-appellants' evidence.

Inasmuch as judgment was entered at the close of plaintiffs-appellants' evidence, this court may consider only the evidence, together with any reasonable inferences which may be drawn therefrom, most favorable to plaintiffs-appellants. We may not weigh the evidence and must exclude all conflicting evidence that is favorable to defendants-appellees. *Gwaltney Drilling, Inc.* v. *McKee,* 148 Ind. App. 1, 259 N. E. 2d 710, 22 Ind. Dec. 48 (1970) ; *Brickman* v. *Robertson Bros. Dept. Store etc.,* 136 Ind. App. 467, 202 N. E. 2d 583 (1964) ; *Ross* v. *Thompson et al.,* 128 Ind. App. 89, 146 N. E. 2d 259 (1957) ; *Garrett* v. *Estate of Hoctel, etc.,* 128 Ind. App. 23, 142 N. E. 2d 449 (1957), (Transfer denied).

The facts from the record before us most favorable to appellants are as follows:

During 1966 appellants were in financial trouble. The approximately 229 acres of land involved was mortgaged with

two different institutions for a total of approxamitely $40,000. One of the lienholders was pursuing its action to foreclose on the mortgage of approximately $20,000. Appellant, John Middelkamp, on direct examination, testified as follows:

"Q. And in December of 1966 do you remember about what the status of that lawsuit was, Mr. Middelkamp? Were they just about ready to order it sold at Sheriff's sale?

"A. I think so."

In order to avoid the impending sheriff's sale, appellants and appellees-Alex and Ruth Hanewich agreed that the land would be deeded, by warranty deed, to the Hanewichs in exchange for $55,000. It was also agreed that as soon as appellants could arrange to borrow the money, title would be transferred back to appellants, or their son, in exchange for an amount in excess of $55,000. As part of the agreement appellees-Hanewichs were to have exclusive possession of the farm with the exception of the house in which appellants were to live rent free. Also, appellant-Mr. Middelkamp was to work part-time on the farm at an hourly rate of $1.50. Mr. Middelkamp continued to work for approximately a year and one-half, and then he quit. Throughout the negotiations there were three parties—the Middlekamps, the Hanewichs and the attorney for appellants John E. and Larain Middelkamp. In early 1969, about one month before the action which gave rise to this appeal was commenced, appellee-Alex Hanewich asked appellants to pay rent to live in the house.

Appellants and appellees-Hanewichs were long-time friends. Appellant-John Middelkamp had worked for Alex Hanewich in the past, driving a school bus.

After title was conveyed a contract was prepared to reflect this arrangement. Although on several occasions there was a great deal of discussion about it, the contract was never signed by either of the parties. There were "some things" in the contract that appellee-Alex Hanewich did not like but

"he swore his solemn oath and gave his word faithfully as a friend and gentleman that my husband [John Middelkamp] could have it back any time we could get the money."

On December 19, 1966, shortly after appellants conveyed the land to appellees-Hanewichs, appellees-Hanewichs conveyed title to appellee-State Exchange Finance Company for a valuable consideration. Both deeds were recorded in the office of the County Recorder of Jasper County, Indiana.

On February 20, 1969, appellants filed suit for rescission of the deed alleging fraud on the part of appellees-Hanewichs in inducing the transfer of title to the real estate. Appellants amended their complaint to add appellee-State Exchange Finance Company as an additional defendant.

Appellees answered in general denial and State Exchange Finance Company alleged it was a bona fide purchaser, in good faith and without notice or knowledge of any interest of appellants in and to said real estate. State Exchange also filed a counterclaim to quiet title to the real estate involved.

Appellants sole assignment of error is the overruling of their motion for a new trial. In their motion for a new trial appellants contend that the trial court erred in sustaining each of defendants' separate motions for findings in their favor and that the decision of the court is contrary to law. Appellants recognize that the burden was upon them to establish the elements of fraud and argue in their brief that they carried their burden. Alternatively, however, they argue that the evidence established a confidential relationship and thus a burden was imposed upon appellees-Hanewichs to establish that no undue influence was used on their part to induce the execution of the deed in question.

Appellants argue that based upon the evidence contained in the record the trial court weighed the evidence in order to sustain defendants-appellees' motions for a finding and, thus, committed reversible error.

The issue presented by this appeal is: Did plaintiffs-

appellants establish a prima facie case of fraud, or, in the alternative, a confidential relationship on the part of appellees-Hanewichs?

The only basis for appellants' action for rescission of the deed was the alleged fraud. Following the opening statements counsel for appellants admitted that no fraud was charged against appellee-State Exchange Finance Company. The record is devoid of any evidence of fraud on the part of State Exchange Finance Company. Therefore, the trial court did not err in sustaining the motion for a judgment for appellee-State Exchange Finance Company.

The essential elements of actionable fraud are *representations*, falsity, scienter, deception and injury. *Edwards* v. *Hudson*, 214 Ind. 120, 122, 14 N. E. 2d 705 (1938) ; *General Electric Co.* v. *Dorr, et al.*, 140 Ind. App. 442, 448, 218 N. E. 2d 158 (1967), (Transfer denied) ; *Farm Bureau Mutual Ins. Co.* v. *Seal, Admr.*, 134 Ind. App. 269, 277, 179 N. E. 2d 760 (1963), (Transfer denied) ; *Baker* v. *Meenach*, 119 Ind. App. 154, 160, 84 N. E. 2d 719 (1949).

Fraud will not be presumed but must be proved by the party alleging it. It is not necessary, however, that fraud be proved by direct or positive evidence. It will be sufficient if facts and circumstances be proved from which fraud can be fairly inferred. *Edwards* v. *Hudson*, *supra; Baker* v. *Meenach, supra; Automobile Underwriters, Inc.* v. *Smith*, 131 Ind. App. 454, 166 N. E. 2d 341 (1961), (Transfer denied).

Thus, if appellants failed to prove by positive evidence, or failed to introduce sufficient facts and circumstances from which all of the elements of actionable fraud could be fairly inferred, they failed to establish a prima facie case of fraud.

In attempting to establish a prima facie case of fraud, appellants first had to establish that appellees-Hanewichs had made a representation. Appellants succeeded in establishing that appellees-Hanewichs represented to appellants that the

real estate in question would be transferred back to them when they, or their son, were able to raise the money. However, this is not a representation that will serve as the basis for actionable fraud. As stated by our Supreme Court in *Smith* v. *Parker*, 148 Ind. 127, at 133, 45 N. E. 770, at 771 (1897):

> "It is settled law that representations upon which an action for fraud can be predicated, must be of alleged existing facts and not upon promises to be performed in the future." (Citing authorities.) See also: *Sachs* v. *Blewett*, 206 Ind. 151, 185 N. E. 856 (1934); *Westphal* v. *Heckman*, 185 Ind. 88, 113 N. E. 299 (1916); *Fouty* v. *Fouty and Another*, 34 Ind. 433 (1870); *The President and Trustees of Hartsville University* v. *Hamilton*, 34 Ind. 506 (1870); *Johnson-Johnson, Inc.* v. *Farah*, 123 Ind. App. 87, 108 N. E. 2d 638, 76 A.L.R. 2d 826 (1952).

There is nothing in the record to establish or to support an inference that any representation of past or existing facts was made to appellants. Therefore, they failed in their burden to establish a prima facie case of fraud.

In support of their argument that a burden was imposed upon appellees-Hanewichs to show that no undue influence was used appellants cite *Ikerd, et al.* v. *Beavers*, 106 Ind. 483, at 489, 7 N. E. 326, at 329 (1886), wherein our Supreme Court stated:

> "Where a contract has been procured from one who is in a situation of distress and necessity, by another who stands in a relation of confidence to, or who is in a situation of advantage over, such person, the burden is on him who procures the benefits of such a contract to show, among other things, that it was made in the exercise of the free and voluntary choice of the other." (Citing authorities.)

In *Ikerd* the court found that an inference of undue influence arose "from . . . the sickness, age and mental depression of the defendant, and his helpless and dependent condition, as it related to the plaintiffs, . . ." (*Ibid* at 489) *Ikerd* is distinguishable from the instant case.

While the rule regarding undue influence which arises from

a confidential relationship is generally invoked where a fiduciary relationship exists, this court recognized very early that its application is not limited to such cases. As stated in *Firebaugh* v. *Trough,* 57 Ind. App. 421, at 428, 107 N. E. 301, at 303 (1914):

> "While the foregoing rule is frequently invoked where a fiduciary relation exists, its application is not limited to such cases. It is frequently applied where the facts show a relation of trust and confidence justifying one in relying thereon, and where the party occupying the superior position has abused such confidence and dependence and used it to gain an unfair advantage over the party relying thereon." (Citing authorities.)

The evidence most favorable to appellants discloses that appellant-Mr. Middelkamp and appellee-Mr. Hanewich had been friends since they had started to school. They were good friends and visited back and forth. Appellant had worked part-time for appellee on the farm and driving a school bus while appellee was the township trustee. Appellants were represented by an attorney during some of the negotiations before the execution of the deed. Appellants have cited several cases in which a presumption of undue influence arose: *Ikerd, et al.* v. *Beavers, supra; Burgin et al.* v. *Dries,* 130 Ind. App. 249, 163 N. E. 2d 609 (1960); *McCord* v. *Bright,* 44 Ind. App. 275, 87 N. E. 654 (1909); *Majewski* v. *Gallina,* 17 Ill. 2d 92, 160 N. E. 2d 783 (1959). All of these cases are different on the facts from the instant case. In those cases the plaintiffs were elderly, sick, illiterate or dying and because of the factual differences they are not determinative of the issue in the instant case.

Appellants do not cite, and we are unable to find a case in which a long-time friend and occasional part-time employer, who had not been consulted about financial or family matters, is placed in such a confidential relationship so as to raise a presumption of undue influence.

No confidential relationship arises from a mere showing of long-time friendship and occasional part-time employment.

However, even if a confidential relationship existed appellants could not prevail in this appeal because the record before us does not establish a valid tender.

It is not contended that appellees-Hanewichs could not have reconveyed title and thus a valid tender by appellants would have been unavailing. As appellants succinctly state at page 50 of their brief:

"The only evidence indicates that Mr. Hanewich had stated that he possessed the ability to transfer the property to the Middelkamps. At no point in the evidence has the State Exchange Finance Company, as a defendant, been found to be a part of the fraudulent activities which led to the conveyance to the Hanewichs. The evidence discloses that the Hanewichs have the ability to reconvey."

This court in *Supreme Tent, etc.* v. *Fisher*, 45 Ind. App. 419, at 426-427, 90 N.E. 1044, at 1046 (1910), stated:

"To constitute a tender there must be, on the one hand, a definite offer to pay and, on the other hand, an unqualified refusal to accept. [Citing authorities.] * * *

"While the formal requisites of tender may be waived, there can be no waiver of performance, unless there is an ability to perform. [Citing authorities.] * * * The burden of showing an ability to do a particular thing offered to be done is upon the party making the offer."

Although appellants alleged the requisite tender and refusal, the record reveals that at no time did the Middelkamps have the money and at the same time offer it to appellees-Hanewichs. Mere ability to obtain the money or to borrow it is not sufficient. The money must have been in the control of appellants so that they could have placed it in the hands of appellees. *Mathis* v. *Thomas*, 101 Ind. 119 (1885).

The record reveals that no definite amount was stated by appellee-Mr. Hanewich but it is clear that the tender would have had to be in excess of $55,000. Under such circumstances

it was incumbent upon appellants to tender as much as they thought was justly due.

The fact that this was a proceeding in equity will not cure the failure of appellants to make a valid tender. As our Supreme Court stated in *King* v. *Finch*, 60 Ind. 420, at 422-423 (1878):

> "Tenders are always to be considered *stricti juris;* if a tender is not legal in every respect, even a court of equity will not support it, nor supply a defect. Nor are tenders more favored at law; the rules which govern them are strict, and must be strictly applied. * * * It is the duty of a debtor, who owes money to seek his creditor and pay his debt, wherever the creditor may be found in the State. [Citing authorities.]
>
> " 'If a tender is not legal, a court of equity will not support it: nor supply a defect of a tender against a rule of law, unless perhaps where fraud is used to prevent it.' *Gammon* v. *Stone*, 1 Ves. Sen. 339."

Appellants failed to establish a prima facie case of fraud, or, in the alternative, a confidential relationship. Assuming that appellants had established one of the above, the trial court did not err in sustaining the motions of appellees for a judgment because of the lack of a valid tender.

Judgment affirmed.

Pfaff, Sharp and White, JJ., concur.

NOTE.—Reported in 263 N. E. 2d 189.