WILLIAM M. GRISSOM, AMY GRISSOM *v.* THEODORE F. MORAN, NEDRA J. MORAN.

[No. 771A123. Filed December 12, 1972. Rehearing denied February 21, 1973. Transfer denied July 16, 1973.]

*Wolf & Robak,* of Greenfield, for appellants.

*Joseph F. Quill, John G. McNutt,* of Indianapolis, for appellees.

CASE SUMMARY

BUCHANAN, P.J.—Plaintiffs-appellants, William and Amy Grissom (Grissoms) appeal from a judgment in the amount of Six Thousand Nine Hundred Thirty-one Dollars ($6,931.00) entered against them in a court trial on their Complaint for Breach of Contract and in favor of defendants-appellees, Theodore and Nedra Moran (Morans) on their Counterclaim for fraudulent misrepresentation, the controversy arising out of the sale of a motel and real estate. We affirm.

FACTS—The facts and evidence most favorable to Morans and the judgment below are:

In February of 1968, the Morans became interested in purchasing the Woods Motel (the Motel) in Greenfield, Indiana, which at that time had been owned by the Grissoms since 1962. Prior to reaching an agreement for the sale of the Motel, the Morans discussed with the Grissoms. the physical condition of the Motel and its volume of business. During these conversations, the Grissoms represented to the Morans as potential buyers that the facilities "were all in fine working condition." The Morans then specifically inquired about the sewage and electrical systems of the Motel, to which the Grissoms responded that "they were all right." There was also an indication by the Grissoms that they had experienced no problems with the sump pump or water backing up into the rooms.

While the Morans personally toured the Motel and visited

the various rooms, they did not seek a detailed inspection of the Motel by experts, such as an architect, electrician, or plumber. Instead, they chose to rely upon the statements made by the Grissoms that the facilities of the Motel were in good condition and that there had never been any trouble.

The truth of the Grissoms' representations, at least as to the electrical system, was placed in doubt when the Motel's regular electrician testified that prior to the sale of the Motel he had discussed the inadequacy of the electrical system with the Grissoms and that they all knew that something had to be done towards rewiring the Motel and improving its electrical system. Nothing transpired from these conversations, however, for soon thereafter the Morans purchased the Motel.

On February 29, 1968, the Morans entered into a Land Contract (the Contract) with the Grissoms whereby the Grissoms agreed to sell the Motel with furnishings and equipment for a total purchase price of $115,000.00. Of this amount $2,500.00 was paid immediately as a down payment and the balance payable in installments of $1,500.00 on the first day of each calendar month plus payment by Morans of an additional $5,000.00 each year on the anniversary date of the Contract and all property tax installments, insurance premiums, and any assessments for public improvements.

The Morans took possession of the Motel on March 1, 1968, and soon thereafter were besieged with various mechanical problems. The kitchen sink in the restaurant and the toilets in the Motel rooms began to back up. Sewage flooding required extensive cleansing of many of the units, which were not then available for rental purposes during the cleaning period thereby causing loss of business. Ultimately, the Morans had to replace the pump for the sewage system because, as the plumber testified, the old pump was simply not adequate for the Motel's operations.

In addition to the faulty plumbing, the air conditioning system failed to function properly. After analyzing the

problem, the Motel's electrician discovered several burned-out electrical switches in addition to the generally defective electrical system. The electrician informed the Morans that the electrical system was simply not adequate to handle the electrical needs of the Motel. He therefore recommended that the Motel be rewired, and the Morans agreed. During their seven months of possession, the Morans were forced to spend $944.24 for repairs to the sewage system, a new sewage pump, the electrical system, cleaning of the flooded rooms, and various other items.

In July of 1968 the Morans informed the Grissoms by letter of the repairs and problems they had incurred since they obtained possession of the Motel on March 1, 1968. No response was tendered by the Grissoms. Nevertheless, the Morans continued their monthly payments of $1,500.00 until August 1, 1968, at which time the payments stopped. From March 1, 1968 until August 1, 1968, the Morans had paid the Grissoms a total of $10,000.00 under the Contract, representing a $2,500.00 down payment and five monthly installments of $1,500.00 each.

In early October of 1968, the Morans, on two occasions, requested the Grissoms to reduce the monthly payments of $1,500.00 due to the various repairs and problems incurred by the Morans. When the Grissoms refused, the Morans explained that without a reduction they would have to rescind the Contract and return possession to the Grissoms. The desired reduction was not granted, so possession of the Motel was surrendered to the Grissoms on October 15, 1968.

The Morans testified that prior to leaving the Motel they thoroughly cleaned it, alleging that it was left in better condition than when they obtained possession.

The Grissoms brought an action for breach of contract, seeking recovery of the monthly installments for the period of August 1 to October 15, damages for waste, and the unpaid November property tax installment. The Morans filed a Counterclaim, seeking a rescission of the Contract and "dam-

ages" in the amount of $11,000.00, alleging that the Grissoms fraudulently misrepresented the condition of the Motel prior to execution of the Contract.

The trial court entered judgment against the Grissoms and in favor of the Morans on their Counterclaim, awarding them $6,931.00. The Grissoms now appeal.

## ISSUES

ISSUE ONE. Does the evidence support the trial court's finding that prior to the sale the Grissoms fraudulently misrepresented the condition of the Motel, thereby entitling the Morans to rescind the Contract?

ISSUE TWO. Was the award of $6,931.00 so excessive as to constitute damages rather than a return to the status quo as required by a theory of rescission based on fraud in the inducement?

As to ISSUE ONE, the Grissoms submit that the evidence was insufficient to prove the essential elements of fraud and that absent such proof the Morans were not entitled to recovery on their Counterclaim for fraudulent misrepresentation. They also argue that damages are due them because the Morans breached the Contract by retaining possession of the Motel, by refusing to make the monthly installment payments of $1,500.00 for the period of August 1 to October 15 of 1968, by failing to pay the November property tax installment, and by committing waste on the premises during their possession.

The Morans, on the other hand, contend that the evidence favorable to them and the judgment below, together with the reasonable inferences to be drawn therefrom, justified the trial court's finding that the Grissoms fraudulently misrepresented the condition of the Motel entitling them to rescission of the Contract.

As to ISSUE TWO, the Grissoms assert that when a party

elects to rescind a contract he is not entitled to damages; rather, he is only entitled to be put into the position that he was prior to the time that the contract was entered into. For this reason, they argue that the award of $6,931.00 amounted to damages and not a return to the status quo.

The Morans reply that the $6,931.00 judgment entered in their favor did not amount to damages for the reason that it was more than $4,000.00 less than the total required to return them to the status quo.

Errors assigned by Grissoms on appeal are that: "The decision of the Court was not supported by sufficient evidence" and that "the decision of the Court was contrary to law."

## DECISION

ISSUE ONE—It is our opinion that the evidence was sufficient to sustain the trial court's finding that the Morans did not breach the Contract because the Grissoms had fraudulently misrepresented the condition of the Motel to the Morans and were therefore entitled to rescission.

Grissoms' assigned errors that the trial court's judgment was not supported by sufficient evidence and was contrary to law causes us to reiterate the oft-iterated rule that when the sufficiency of the evidence is questioned on appeal, the reviewing court will not weigh the evidence but will consider only that evidence most favorable to the appellee together with the reasonable inferences to be drawn therefrom. *Muehlman* v. *Keilman* (1971), 257 Ind. 100, 272 N.E.2d 591; *Green* v. *Board of Commissioners of Scott County* (1969), 251 Ind. 535, 242 N.E.2d 844; *Smart & Perry Ford Sales, Inc.* v. *Weaver* (1971), 149 Ind. App. 693, 274 N.E.2d 718.

Also ingrained in our appellate practice is the principle that when trial is to the court the ultimate facts as found by

the trial court must be accepted by this court if there is sufficient evidence to support such facts. We may not reverse the judgment unless it is "clearly erroneous." Rule TR. 52(A) ; *First National Bank of Mishawaka* v. *Kamm* (1972), 152 Ind. App. 353, 283 N.E.2d 563.

To determine whether Grissoms have climbed the mountain that every appellant must climb who assigns such errors, we first briefly review familiar fraud law.

When fraud is relied on as a basis for recovery, the alleging party must prove all of the essential elements of fraud by a preponderance of the evidence. *Automobile Underwriters, Inc.* v. *Smith* (1960), 131 Ind. App. 454, 166 N.E.2d 341; *Farm Bureau Mutual Ins. Co. of Indiana* v. *Seal* (1962), 134 Ind. App. 269, 179 N.E.2d 760; *Kuzma* v. *Kaczur* (1966), 138 Ind. App. 506, 214 N.E.2d 195.

However, direct or positive proof is not essential to establish fraud; circumstantial evidence will suffice if there are grounds from which fraud may be reasonably inferred. *Tompkins* v. *Smith* (1952), 122 Ind. App. 502, 106 N.E.2d 487; *Edwards* v. *Hudson* (1934), 214 Ind. 120, 14 N.E.2d 705; *Johnston* v. *Johnston* (1962), 134 Ind. App. 351, 184 N.E.2d 651; *Jordanich* v. *Gerstbauer* (1972), 153 Ind. App. 416, 287 N.E.2d 784; *General Electric Co.* v. *Dorr* (1966), 140 Ind. App. 442, 218 N.E.2d 158; *Aultman & Taylor Machinery Co.* v. *Shell* (1916), 61 Ind. App. 19, 111 N.E. 445.

The essential elements of actionable fraud are a material representation of past or existing facts, which representations are false, made with knowledge (scienter) or reckless ignorance of this falsity, which cause a reliance upon these representations to the detriment of the person so relying. *Middelkamp* v. *Hanewich* (1970), 147 Ind. App. 561, 263 N.E.2d 189; *Edwards* v. *Hudson, supra; General Electric Co.* v. *Dorr, supra; Farm Bureau Mutual Ins. Co. of Indiana* v. *Seal, supra.*

If there is evidence to support each essential element of Morans' claim of fraud then we must affirm. So viewing the evidence most favorable to the Morans we examine each of these essential elements separately.

The Morans were first required to prove that the Grissoms had made a material representation relating to a past or existing fact. There was proof as to several statements made in response to questions posed by the Morans concerning the physical condition of the Motel, specifically the sewage and electrical systems. The Grissoms generally represented that the facilities of the Motel "were all in fine working condition" and with reference to the sewage and electrical systems that, "they were all right." There was also a representation that no problem existed as to the sewage system or water backing up into the individual rooms. Certainly these representations concerning the Motel and its facilities were of existing material facts—they concerned the basis of the bargain, the existing condition of the Motel.

The falsity of these representations was apparent soon after the Morans obtained possession of the Motel. They not only faced problems with the sewage and electrical systems, but with various other facilities. A plumber and electrician testified as to the defectiveness and inadequacy of the sewage and electrical systems.

An unqualified statement that a fact does or does not exist implies that the person making the statement is acquainted with the facts. Therefore, a fraudulent purpose may be inferred if the statement is false and reliance is thereby induced. *General Electric Co.* v. *Dorr, supra; Brotherhood of Railroad Trainmen* v. *Virben* (1940), 216 Ind. 324, 24 N.E.2d 934; *Jordanich* v. *Gerstbauer, supra.*

The Grissoms' knowledge of the falsity of their representations may be inferred from several factors. They had owned, operated, and lived in the Motel for approximately six years prior to this sale. It is reasonable to infer that during this

six-year period the Grissoms became familiar with its operation and the condition of its systems and facilities. Even if the Grissoms were not well acquainted with the condition of the Motel and its facilities, their unqualified statement that the facilities of the Motel "were all in fine working condition" implied to the Morans that the Grissoms were in fact acquainted with the condition of the Motel. At the very least it could reasonably be inferred that the Grissoms made these representations with a reckless disregard of the truth.

Scienter could also reasonably be inferred from evidence that prior to the sale of the Motel the electrician spoke with the Grissoms concerning the Motel's defective and inadequate electrical system thereby imparting knowledge to them that something needed to be done to improve the electrical system. No action was taken by the Grissoms.

Another essential element of actionable fraud is that the person seeking to recover must have been deceived by the misrepresentations and he must have acted in reliance upon them. *Automobile Underwriters, Inc.* v. *Smith, supra; First National Bank* v. *Garner* (1918), 187 Ind. 391, 118 N.E.2d 813; *McClellan* v. *Tobin* (1942), 219 Ind. 563, 39 N.E.2d 772. While the person relying is bound to use ordinary care and diligence to guard against the fraud, *Auto Owners Mutual Ins. Co.* v. *Stanley* (1967), 262 F. Supp. 1; *Wood* v. *Wack* (1903), 31 Ind. App. 252, 67 N.E. 562; the requirement of reasonable prudence in business transactions is not carried to the extent that the law will ignore an intentional fraud practiced upon the unwary. *Farm Bureau Mutual Ins. Co. of Indiana* v. *Seal, supra.* Since one has the right to rely upon representations where the exercise of reasonable prudence does not dictate otherwise, the mere occurrence of a false representation does not necessarily require the other party to ascertain the truth of the representation. *Voorhees* v. *Cragan* (1916), 61 Ind. App. 690, 112 N.E. 826. A purchaser may rely on statements of fact made by the seller where such statements are not ob-

viously false and where the facts are peculiarly within the knowledge of the seller. *Kluge* v. *Ries* (1917), 66 Ind. App. 610, 117 N.E. 262; *Culley* v. *Jones* (1905), 164 Ind. 168, 73 N.E. 94; *Maywood Stock Farm Importing Co.* v. *Pratt* (1915), 60 Ind. App. 131, 110 N.E. 243; *Miller* v. *Haney* (1917), 64 Ind. App. 406, 116 N.E. 21.

The evidence indicates that reliance by the Morans was reasonable. They carefully inspected the premises and found no defects—apparently all systems were in acceptable working condition. There were no indications of possible defects that might have placed on them a duty to independently inquire further. The latent defects that existed were peculiarly within the knowledge of the Grissoms. They also asked questions to which they received satisfactory replies, and on which they relied—reasonably, we think—under the circumstances.

There hardly can be any dispute that the Morans incurred damage from this transaction. They spent nearly $1,000.00 in repair and replacements.

There is more than sufficient evidence and reasonable inferences therefrom to support each essential element of fraud. It is also apparent from the foregoing that the judgment was not contrary to law, i.e., that the evidence was without conflict and led to but one reasonable conclusion and the trial court reached a contrary conclusion.

The Grissoms, as appellants, have not climbed the mountain of reversal on these grounds.

ISSUE TWO—It is our opinion that the award of $6,931.00 was not beyond the scope of the evidence and did not constitute damages, but was merely an attempt to return the Morans to the position they occupied prior to the execution of the Contract.

Generally, a party bringing an action for fraud has an election between two remedies: he may affirm the contract,

retain any benefits received and seek damages; or, he can rescind the contract, return any benefits received and be returned to the status quo. *Sickels* v. *Aetna Securities Co.* (1942), 220 Ind. 347, 41 N.E.2d 947; *Prudential Ins. Co. of America* v. *Smith* (1952), 231 Ind. 403, 108 N.E.2d 61; *Johnson* v. *Culver* (1888), 116 Ind. 278, 19 N.E. 129; *Bailey* v. *London Guarantee & Accident Co.* (1918), 72 Ind. App. 84, 121 N.E. 128; *Ohlwine* v. *Pfaffman* (1913), 52 Ind. App. 357, 100 N.E. 777. If he elects to rescind the contract, he may not recover damages. He is only entitled to return to the status quo, which usually necessitates a refund of any moneys paid under the contract plus reimbursement for any reasonable expenditures incurred as a proximate result of the fraudulent conduct. *Sickels* v. *Aetna Securities Co., supra.*

In their Counterclaim the Morans sought an award of $10,944.24 (and received only $6,931.00), computed by them in this manner:

| Return of moneys paid under the Contract | | |
|---|---|---|
| Down payment | $2,500.00 | |
| Five monthly installments under the Contract of $1,500.00 each | 7,500.00 | $10,000.00 |
| Reasonable expenditures | | 944.24 |
| TOTAL | | $10,944.24 |

From this computation, a mere return of the moneys paid by the Morans under the Contract would have entitled them to $10,000.00. A complete return to the status quo would have entitled them to *at least* $10,944.24. As a result, the award of $6,931.00 certainly did not constitute damages and was not beyond the scope of the evidence.

The judgment of the trial court is therefore affirmed.

Sullivan and White, JJ., concur.

NOTE.—Reported at 290 N.E.2d 119.