308 N.E.2d 395 (1974)
SOFT WATER UTILITIES, INC., Defendant-Appellant,
v.
Richard L. LeFevre, Plaintiff-Appellee.
No. 1-1072A88.
Court of Appeals of Indiana, First District.
March 14, 1974.
*396 J.A. Bruggeman, Douglas E. Miller, James M. Prickett, Fort Wayne, for defendant-appellant.
Kendall, Stevenson, Howard & Lowry, Danville, Rexell A. Boyd, Greencastle, for plaintiff-appellee.
ROBERTSON, Presiding Judge.
The plaintiff-appellee (LeFevre) brought this action against defendants Soft Water Utilities, Inc., C.A. Farrell, and N. Hurst, to recover damages for fraud, aggravated by conspiracy, arising out of a securities transaction. The trial court after a bench trial entered judgment for LeFevre and awarded him $6,644 in damages plus interest from April 8, 1959, and costs. Soft Water brings this appeal and urges that the trial court's judgment is not supported by sufficient evidence and is contrary to law with respect to LeFevre's allegations of fraud, agency, and conspiracy, with respect to proof of damages.
In 1958 Soft Water was desirous of issuing an additional 50,000 shares of common stock in order to raise money for working capital and for expansion purposes. The *397 corporation already had outstanding 250,000 shares of common stock. A prospectus was prepared and registered with the Indiana Securities Commission, and the asking price per share for the new issue was set at $5.00. The prospectus contained a balance sheet which showed the corporation's net worth to be $343,690.85.
To facilitate the sale of these securities, Soft Water entered an agreement with defendant C.A. Farrell, a licensed stockbroker, which provided that Farrell would be the exclusive sales representative for the new issue. Farrell employed defendant N. Hurst to assist him in deposing of the new issue.
In April, 1959, Hurst visited LeFevre in the latter's home to discuss the stock issue. LeFevre read the prospectus at this time, and after talking with Hurst for about two hours decided to buy 2,080 shares. This litigation arose because what was actually delivered to LeFevre was not 2,080 shares of the new issue stock, rather 2,080 shares of the previously issued stock which had a market value somewhat less than the $5.00 asked for the new issue.
In reviewing a judgment challenged as not being supported by sufficient evidence, we are constrained to consider only that evidence most favorable to the appellee. We can neither weigh the evidence nor determine the credibility of witnesses. Nugent v. Smith (1972), Ind. App., 287 N.E.2d 899; Engelbrecht v. Tri-State Franchisers, Inc. (1972), Ind. App., 287 N.E.2d 365.
We first note that LeFevre's action against Soft Water is not based upon the Indiana Securities Law as it stood in 1959. Ind. Ann. Stat. § 25-829 et seq. (Burns 1960). The only civil remedy available thereunder was an action for recission by the purchaser. Ind. Ann. Stat. § 25-847 (Burns 1960). In this case LeFevre did not seek recission, but damages instead. He chose to retain the shares of stock transferred to him. That the legislature did not intend the Securities Law to be an exclusive remedy was evident:
"The rights and remedies provided by this act shall be in addition to any and all other rights and remedies that may exist at law or in equity." Ind. Ann. Stat. § 25-850 (Burns 1960).
The essential elements of common law fraud have long been established as being material misrepresentation, scienter, reliance, and injury. See Middlekamp v. Hanewich (1970), 147 Ind. App. 561, 263 N.E.2d 189; Farm Bureau Mut. Ins. Co. of Ind. v. Seal (1962), 134 Ind. App. 269, 179 N.E.2d 760. We will review the evidence most favorable to the appellee to determine the existence of each element.
Several misrepresentations were made to LeFevre by Hurst. Hurst stated that the new issue of 50,000 shares was almost sold out, when in fact only 1,089 shares were ever sold. In addition, Hurst led LeFevre to believe that the latter was buying new issue stock rather than previously issued stock. The two men discussed the use to which the corporation would put the funds acquired through the sale of the new issue with Hurst stating that the funds would go to the corporate treasury. The prospectus given to Lefevre by Hurst dealt, of course, only with the new issue. That these misrepresentations were material cannot be seriously contested. If most of the new issue shares had been sold the net worth of the corporation would have been augmented by anywhere from $200,000 to $250,000, less the brokers fee.
Soft Water contends that no false representations were made, and instead that during the discussion between Hurst and LeFevre the conversation turned away from the new issue towards a transaction in stock previously issued. Soft Water points to the fact that the prospectus called for cash, but LeFevre, not having the necessary *398 cash, offered his 1,000 shares in First United Life Insurance Company instead. Hurst told LeFevre that he was not authorized to accept anything other than cash and that he would have to check with Farrell. Farrell approved the deal and credited LeFevre $10 per share for the First United stock, which closely approximated its market price at that time. Soft Water contends that since LeFevre knew that Soft Water Utilities would not accept stock in exchange for the new issue shares, and since LeFevre was experienced in securities transactions, he was aware that the subject matter of the transaction had changed to previously issued stock, and, hence, no false representation was made. LeFevre, on the other hand, states that the understanding was that Farrell would either sell the First United stock on the open market or buy it himself, and use the cash proceeds to purchase the new issue shares from Soft Water. The trial court accepted LeFevre's understanding of the transaction and the record adequately supports such a finding.
The next element required is scienter. The evidence indicated that Hurst may not have been aware of the falsity of his representations concerning the total number of new issue shares already sold and the nature (new issue or previous issue) of the stock being sold to LeFevre. However, that does not preclude the existence of scienter. Hurst received his information and instructions from his employer, Farrell, and the evidence is such that scienter can readily be inferred to Farrell. Farrell, the exclusive agent for Soft Water for the sale of the new issue, had convinced the board of directors of the corporation that in order to "support the market" for the new issue, it was necessary for him to buy and sell the stock previously issued. During the period of the exclusive relationship, Farrell bought and/or sold approximately 17,000 shares previous issue stock, selling the shares at $5.00 each, while the total number of new issue shares ever sold was 1,089. These facts support the trial court's finding that previous issue stock was being sold as new issue. Hence arose the inference that Farrell was aware that false representations were being made to LeFevre by Hurst in furtherance of Farrell's scheme. Soft Water suggests that scienter cannot be established by inference, but the law is to the contrary. See Grissom v. Moran (1972), Ind. App., 290 N.E.2d 119; Middlekamp v. Hanewich, supra.
Another element of fraud is that the person wronged must show that he was deceived and acted in reliance on the misrepresentations. The person relying on the representations is bound to use ordinary care and diligence to guard against fraud; however, the requirement of reasonable prudence in business transactions is not carried to the extent that the law will ignore an intentional fraud practice on the unwary. Grissom v. Moran, supra. A person has a right to rely upon representations where the exercise of reasonable prudence does not dictate otherwise. Voorhees v. Cragun (1916), 61 Ind. App. 690, 112 N.E. 826.
The evidence shows that LeFevre was justified in believing that he was being sold new issue stock and that the corporation would receive the funds from the sale. Nothing to the contrary was said during his conversation with Hurst. The prospectus, which had been registered with the Indiana Securities Commission referred only to the new issue stock. LeFevre asked questions concerning the use to which the corporation would put the cash acquired from the sale of the new issue. There was nothing unusual about the transaction or the parties with whom LeFevre was dealing that would have required him to investigate. In reliance on the representations, LeFevre purchased 2,080 shares of stock.
That LeFevre was injured, the final essential element of fraud, was also established by the evidence. He paid $10,400 for *399 an interest in a corporation which, according to the representations made to him, had a net worth substantially greater than the figure listed in the balance sheet in the prospectus. The fact that Soft Water did not receive LeFevre's $10,400 nor the funds from the sale of "almost all" of the rest of the new issue meant that the corporation's prospects for future growth and increased profits was considerably diminished. His injury, therefore, consisted of his being given an interest worth less than the value represented.
The evidence together with its reasonable inferences sufficiently supports each of the essential elements of fraud.
Beyond establishing fraud, however, Soft Water claims that LeFevre had to establish that Farrell and Hurst were agents of Soft Water, and, in addition, that they were acting within the scope of their authority. Soft Water contends that LeFevre failed to show this. We disagree.
A special agency relationship was clearly established. Farrell was employed by Soft Water for the limited purpose of disposing of the new issue stock. Concerning the question of authority, Soft Water will be responsible for the tortious conduct of Farrell and Hurst if the latter two men possessed either actual or apparent authority to make the representations here involved. When a principal manifests to a third party that its agent is authorized to enter negotiations or make representations on behalf of the principal, the agent is cloaked with apparent authority. See Storm v. Marsischke (1973), Ind. App., 304 N.E.2d 840. The prospectus given to Lefevre by Hurst stated that Farrell had an exclusive contract with Soft Water for the sale of the new issue. This provided the manifestation from Soft Water to LeFevre.
The Restatement (Second) of Agency § 261 (1957) provides:
"A principal who puts a servant or other agent in a position which enables the agent while apparently acting within his authority to commit a fraud upon third persons, is subject to liability to such third persons for the fraud."
Comment (a) to this section suggests the reason for this rule:
"The principal is subject to liability under the rules stated in this section although he is entirely innocent, has received no benefit of the transaction, and ... although the agent acted solely for his own purpose. Liability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person, the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him."
Since Farrell and Hurst did possess apparent authority and because their representations concerning the quantity of new issue shares sold and the nature of the stock being sold to LeFevre were within the scope of their authority, liability did attach to Soft Water. We need not consider whether Farrell and Hurst possessed actual authority.
Having found that Farrell and Hurst were agents of the corporation we must depart from the trial court's ruling that the corporation, Soft Water, conspired with Farrell to defraud LeFevre. It is basic to the law of conspiracy that there must be at least two persons or entities to constitute a conspiracy. A corporation cannot conspire with an agent when that agent is acting within the scope of his authority. A corporation acts through its agents and the acts of the agent are the acts of the corporation. Johnston v. Baker (3d Cir.1971), 445 F.2d 424; Pearson v. Youngstown Sheet and Tube Co. (7th Cir.1964), 332 F.2d 439; Nelson Radio & Supply Co. v. Motorola, Inc. (5th Cir.1952), *400 200 F.2d 911. This error by the trial court does not require reversal as the judgment can stand on the agency showing.
Soft Water next contends that LeFevre offered no proof of his actual damages, and that, therefore, the trial court's award was impermissibly speculative. This contention is without merit as the trial court had sufficient evidence before it from which it could determine LeFevre's damages. It was shown that LeFevre paid $5.00 per share for 2080 shares of the stock. It was also shown that the previous issue stock had been purchased by Farrell in different transactions near the time of the LeFevre sale for $2.00, $3.00, and $4.00 per share.
Soft Water's argument concerning the award of exemplary damages is also rejected for the reason that the record does not show that such damages were in fact awarded. The trial court did state in its conclusions of law that Soft Water was liable for exemplary damages, however, the court's award of $6,644 was stated to be for actual damages. No amount attributable to exemplary damages is shown.
In addition, we reject Soft Water's contention that it was error for the trial court to award pre-judgment interest. LeFevre's damages in the instant case were ascertainable at the time of the sale in accordance with accepted standards of valuation. See New York, Chicago and St. Louis Railway Company v. Roper (1911), 176 Ind. 497, 96 N.E. 468
Having concluded that the judgment of the trial court is supported by sufficient evidence, we therefore find it not contrary to law.
Judgment affirmed.
LOWDERMILK and LYBROOK, JJ., concur.