ROBERT F. GONDERMAN *v.* STATE EXCHANGE BANK,
ROANN, INDIANA.

[No. 3-274A35. Filed September 29, 1975.]

*Robert F. Gonderman, Pro Se,* South Bend.

*Gerald A. Kamm, Daniel A. Manion, Doran, Manion, Boynton & Kamm,* South Bend, for appellee.

HOFFMAN, J.—Plaintiff-appellee State Exchange Bank, Roann, Indiana, (Bank) brought this action to recover on a

promissory note which it held by way of endorsement from one Hamlet V. Boisson, the payee. In its complaint, Bank alleged, *inter alia*, that defendant-appellant Robert F. Gonderman had, on August 7, 1967, given such note thereby promising to pay to the order of Boisson the sum of $2,500 "[o]ne (1) year after date," with attorney fees thereon, but without interest. It was further alleged that Boisson had endorsed the note over to the Bank; and that such note was due and unpaid. Accordingly, the Bank sought judgment, including attorney fees, in the sum of $3,300, plus costs of the action.

To this, Gonderman responded by general denial asserting, in addition, that the Bank, having accepted the note after it had become overdue, was not a holder in due course. Appellant further raised certain affirmative defenses including that of fraud and thereby alleged that he was induced by misrepresentations on the part of the payee to execute the note in question.

Following trial to the court, judgment was entered against defendant-appellant Gonderman and in favor of plaintiff-appellee Bank granting the relief requested in its complaint. Thereafter, appellant's motion to correct errors was overruled and the present appeal was perfected.

Appellee Bank does not claim the status of a holder in due course and it is clear that such a position on its part would be untenable. That one who takes an instrument must do so "without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person", is a necessary condition to the attainment of such a status under the provisions of IC 1971, 26-1-3-302(1)(c) (Burns Code Ed.). Further, IC 1971, 26-1-3-304 (Burns Code Ed.), provides, in part, that, "(3) [t]he purchaser has notice that an instrument is overdue if he has reason to know (a) that any part of the principal amount is overdue * * * ." The evidence herein discloses that at the time

the note was purchased by the Bank and endorsed over by Boisson, an officer of the Bank had reason to know that the principal amount had not been paid. In this regard, Mr. James VanBuskirk, president of appellee Bank, testified that the note had been purchased from Boisson on October 1, 1968, and that at such time he "discussed the fact that it was past due" with the payee-endorser. Furthermore, the date and statements on the face of the note itself must be considered to have accorded notice of such fact to the purchaser. Thus, upon the foregoing it would be concluded that the Bank was not a holder in due course with respect to the instrument.

As to the rights of one who is not a holder in due course, IC 1971, 26-1-3-306 (Burns Code Ed.), provides, in part, as follows:

"Unless he has the rights of a holder in due course any person takes the instrument subject to

(a) all valid claims to it on the part of any person; and

(b) all defenses of any party which would be available in an action on a simple contract; and

(c) the defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose (section [26-1-] 3-408);***."

The foregoing provisions of the Indiana Uniform Commercial Code are merely a summarization of certain basic contract principles contained in Restatement of Contracts, § 167(1), at 211 (1932), which reads as follows:

"(1) An assignee's right against the obligor is subject to all limitations of the obligee's right, to all absolute and temporary defenses thereto, and to all set-offs and counterclaims of the obligor which would have been available against the obligee had there been no assignment, provided that such defenses and set-offs are based on facts existing at the time of the assignment, or are based on facts arising thereafter prior to knowledge of the assignment by the obligor." See also: *Nat. City Bank* v. *Kirk* (1922), 85 Ind. App. 120, 134 N.E. 772 (transfer denied).

In the case at bar, the burden of proof with regard to the affirmative defense of fraud rested upon Gonderman, the party asserting such defense. Ind. Rules of Procedure, Trial Rule 8(C). A judgment in favor of the Bank and against Gonderman was, in effect, a finding that Gonderman had not met his burden on this issue and constituted a negative judgment. See, *Chicago South Shore & South Bend Railroad* v. *Brown* (1974), 162 Ind. App. 493, 320 N.E.2d 809 (transfer denied).

On appeal from a negative judgment, the burden is upon the appellant to demonstrate that the decision is contrary to law. Further, it is only where the evidence is without conflict and leads to but one conclusion and the trier of fact has reached a contrary conclusion will the judgment be reversed upon such ground. *Heminger* v. *Police Com'n. of City of Fort Wayne* (1974), 161 Ind. App. 72, 314 N.E.2d 827; *Nicholas* v. *Zimmerman* (1974), 159 Ind. App. 525, 307 N.E.2d 900 (transfer denied); *Illinois Valley Acceptance Corp.* v. *Woodard* (1973), 159 Ind. App. 50, 304 N.E.2d 859; *Senst* v. *Bradley* (1971), 150 Ind. App. 113, 275 N.E. 2d 573.

The central issue to be considered therefore becomes one of whether, upon the evidence adduced at trial, appellant was entitled to judgment as a matter of law.

An examination of the evidence adduced at trial reveals that during 1967, Hamlet V. Boisson, a representative of an organization known as "Oil Investors", approached appellant on several occasions for the purpose of soliciting his investment in certain oil and gas leases which ostensibly had been made available to Boisson through his association with an unidentified corporate official and personal benefactor. Boisson pointed out that the drilling of the wells which were to be located in the vicinity of Alliance, Ohio, was an enormously expensive operation and informed appellant that he anticipated

having difficulty finding reputable investors in the local community. During one such visit with Gonderman, Boisson intimated that a certain gas well was to be drilled near Alliance, and that the proposed well which was to be located between two other existing and highly productive wells could not possibly prove to be unsuccessful. Appellant initially declined Boisson's offer of an interest in the well stating that he was at present financially overextended. Gonderman further expressed skepticism in the arrangement itself and apprised Boisson of his policy not to invest in any enterprise in which the promoters did not themselves invest. Boisson then stated, "Look, I'm putting my own money into this well." And, Gonderman replied: "Now is that true***, are you actually putting your own money in, because if you are you know it means something to me. Actually, I've never heard of a promoter putting his own money in on these wells. He expects to be carried for managing the wells and securing the original lease." Boisson, however, assured him that, "[t]hey were all putting their own money into this venture and that they were subscribing 25 per cent of each well ***." Appellant thereupon became more interested but again observed that he did not find it financially convenient to invest at such time. In reply, Boisson said, "Look, I want you in this. I'll tell you what, you give me your note and I'll see that you get the interest in the oil lease." Thereafter, at the request of Boisson, appellant prepared and executed the note in question, accepting a personal check from Boisson and, in turn, drawing a personal check in favor of "Oil Investors." Although appellant subsequently made inquiries, he never obtained an assignment of interest in the lease.

Later, when the wells had begun to produce it was found that output levels were grossly below the initial representations. Gonderman became suspicious and informed Boisson on or about the date the note became due that he would not honor it until Boisson produced proof that he had invested

his personal funds in the venture. Such proof was not forthcoming. Subsequently, appellant was advised by the Bank of the assignment of the note. He thereafter refused to honor the Bank's demands for payment until such time as Boisson established that his own resources were invested. Through interrogatories filed in a separate action, Gonderman learned that none of the promoters, including Boisson, had invested their own funds, but rather had established their interests by means of ledger entry.

The foregoing evidence is entirely uncontradicted and the question remains as to whether appellant thereby succeeded in establishing a prima facie case of fraud in the inducement.

In *Grissom* v. *Moran* (1972), 154 Ind. App. 419, 290 N.E.2d 119, at 123 (transfer denied), it is stated that,

> "The essential elements of actionable fraud are a material representation of past or existing facts, which representations are false, made with knowledge (scienter) or reckless ignorance of this falsity, which cause a reliance upon these representations, to the detriment of the person so relying." *See Plumley* v. *Stanelle* (1974), 160 Ind. App. 271, 311 N.E. 2d 626; *Soft Water Utilities, Inc.* v. *LeFevre* (1974), 159 Ind. App. 529, 308 N.E.2d 395; *Middelkamp* v. *Hanewich* (1970), 147 Ind. App. 561, 263 N.E.2d 189.

The foregoing elements may be established by circumstantial evidence provided that there are facts from which fraud may reasonably be inferred. *Physicians Mutual Insurance Company* v. *Savage* (1973), 156 Ind. App. 283, 296 N.E.2d 165 (transfer denied); *Jordanich* v. *Gerstbauer* (1972), 153 Ind. App. 416, 287 N.E.2d 784 (transfer denied); *Grissom* v. *Moran, supra; Middelkamp* v. *Hanewich, supra.*

In the present case, the undisputed evidence established that the participation of Gonderman in the venture was by him made contingent upon assurances that Boisson had invested his own funds. In fact, Gonderman had gone so far

as to paint a scenario of the type of arrangement that he desired to avoid—one in which the promotors did not personally invest. Nevertheless, Boisson represented that his own money was involved in the venture and continued to give such assurances. The falsity of these representations became apparent when Boisson could not produce proof of his personal involvement at the insistence of Gonderman. Such fact was confirmed through the use of interrogatories.

An unqualified statement that a fact does or does not exist, when communicated for the purpose of inducing another person to act, implies that the person making such representation is acquainted with the facts; and if action is induced by the false statement a fraudulent purpose will be implied. *Brotherhood of Railroad Trainmen* v. *Virden* (1940), 216 Ind. 324, 24 N.E.2d 934; *Grissom* v. *Moran, supra; Jordanich* v. *Gerstbauer, supra.*

Herein, the particular context in which the representation was made gives rise to a strong inference that it was designed to secure the investment of Gonderman. Furthermore, the statements constituting such representation were direct and unequivocal. Knowledge of the facts and a fraudulent purpose on the part of Boisson may, therefore, be inferred.

Scienter is the next element which must be established. In this regard, the evidence shows that the leases were secured solely by Boisson on behalf of Oil Investors and that Boisson was also the sales representative for the organization. Presumably, Boisson was cognizant of the source and extent of any investments in the venture, particularly his own; and it must be inferred that false statements on the part of Boisson concerning investment in the enterprise were made with knowledge of their falsity.

That the party seeking recovery must have been deceived by the misrepresentation and must have acted in reliance

thereon is yet a further essential element of actionable fraud. *McClellan* v. *Tobin* (1942), 219 Ind. 563, 39 N.E.2d 772; *Grissom* v. *Moran, supra; Automobile Underwriters, Inc.* v. *Smith* (1960), 131 Ind. App. 454, 166 N.E.2d 341, 167 N.E.2d 882, (transfer denied). One relying upon a representation is bound to exercise ordinary care and diligence to guard against fraud; however, the requirement of reasonable prudence in business transactions is not extended so as to permit an intentional fraud perpetrated upon the unwary. *Soft Water Utilities, Inc.* v. *LeFevre, supra; Grissom* v. *Moran, supra; Fletcher Trust Co.* v. *Hauser* (1938), 105 Ind. App. 281, 11 N.E.2d 1012 (transfer denied).

In the case at bar, the evidence indicates that reliance on the part of Gonderman was reasonable. Whether the promotors of a speculative enterprise have, by their own investments, placed themselves upon the same footing as ordinary investors, may well be a significant factor in determining the participation of others in a business venture. Appellant's inquiries in this regard sought information peculiarly within the knowledge of Boisson; not facts readily ascertainable by independent means. And, it must be concluded that his reliance thereon was justified under the circumstances.

The general rule has been stated that fraud without injury never gives rise to a cause of action nor furnishes a basis for defense. *Miller Jewelry Co.* v. *Dickson* (1942), 111 Ind. App. 676, 42 N.E.2d 398. Injury, however, must be considered inherent in the giving of a promissory note where the execution and delivery thereof were induced by the fraudulent misrepresentation of a material fact. The injury exists in the giving of the note by which the maker assumes an obligation. *Watts* v. *Sorenson* (1937), 103 Ind. App. 382, 8 N.E.2d 107; *Burwell* v. *First Nat. Bank* (1927), 86 Ind. App. 581, 159 N.E. 15. See, Annot., 91 A.L.R. 2d 346 (1963); 37 Am. Jur.2d, *Fraud and Deceit,* § 291, at

386-388; Prosser, Torts, § 110, at 733 (4th Ed. 1971). Thus, in the present case, a showing that Gonderman was induced to give a note by a material representation demonstrated to be false gives rise to the inference that he thereby sustained damage; and, it is not necessary under such circumstances that he supply proof of the nature and extent of any pecuniary loss.

It must be concluded that appellant established every element of his affirmative defense and, in the absence of evidence or inferences to the contrary, was entitled to judgment as a matter of law.

The judgment of the trial court entered herein must, therefore, be reversed.

Reversed.

Staton, P.J. and Garrard, J., concur.

NOTE.—Reported at 334 N.E.2d 724.