**PEOPLES TRUST BANK, Daniel Skinner, Ampar, Inc., James J. Duffek and Rosemarie Duffek, Defendants-Appellants,**

v.

**Victor A. BRAUN, Plaintiff-Appellee.**

No. 3–781A173.

Court of Appeals of Indiana, Third District.

Jan. 10, 1983.

Rehearing Denied March 29, 1983.

Milford M. Miller, Grant F. Shipley, Livingston, Dildine, Hayne & Yoder, Fort Wayne, for defendants-appellants.

Clifford E. Simon, Jr., Paul D. Mathias, Shoaff, Parker & Keegan, Fort Wayne, for plaintiff-appellee.

GARRARD, Judge.

This case arose from a dispute between two creditors of an insolvent corporation (Ampar, Inc.) regarding their relative priority for repayment of monies loaned to the corporation.

Ampar was wholly owned by James J. and Rosemarie Duffek. It apparently had a successful product but was continually plagued with financing difficulties. Appellant, Peoples Trust Bank (bank) loaned Ampar money periodically from December 1975 through June 1978.

Despite these loans Ampar needed additional funds, and so during the first week of April 1977, James Duffek and Daniel Skinner, a vice president and commercial loan officer of the bank, met with appellee Victor A. Braun (Braun) to discuss the possibility of Braun loaning money to Ampar. At this meeting Skinner told Braun that any money Braun lent Ampar would have priority for repayment over the bank's prior

loans under a "last in—first out" arrangement. Braun made no decision at that meeting, but on June 22, 1977 he loaned Ampar $50,000. Between March 6, 1978 and July 31, 1978 he loaned Ampar an additional $100,000.

On January 5, 1979 the bank considered Ampar to be in default on the bank's loans and seized Ampar's assets. Then on February 21 Braun filed suit in three counts. Count I requested judgment against the bank and Skinner for $100,000 compensatory damages plus punitive damages. Count II requested judgment against Ampar and James and Rosemarie Duffek for $150,000 and repeated the request against the bank and Skinner set forth in Count I. Count III sought appointment of a receiver for Ampar.

The case was tried to the court and Braun's general motion at the conclusion of the trial to have the pleadings amended to conform to the proof was granted. The court entered findings and awarded judgment against the bank, Skinner, Ampar and the Duffeks for $172,873.61 compensatory damages. It also awarded $50,000 punitive damages against the bank and Skinner. This appeal was then perfected by the bank and Skinner.

The central question presented is whether the evidence, findings and judgment against the bank and Skinner are sustainable upon some theory based upon fraud or fraudulent misrepresentation.[1]

We first consider whether the judgment is sustainable as a legal action for fraud. The focal point for that inquiry is whether the "last in—first out" representation made by Skinner and credited by the court constitutes a misrepresentation that will ground an action for fraud.

In *Plymale v. Upright* (1981) Ind.App., 419 N.E.2d 756, 760, Judge Neal, writing for the First District, noted the historic absence of a precise legal definition of fraud and stated:

1. We agree with appellants that neither the pleadings nor findings support recovery on any
other theory.

"Notwithstanding the lack of an exact legal definition, the elements of a cause of action in fraud are well established: To sustain an action for fraud it must be proven by a preponderance of the evidence that a material representation of a past or existing fact was made which was untrue and known to be untrue by the party making it, or else recklessly made, and that another party did in fact rely on the representation and was induced thereby to act to his detriment. *Fleetwood Corporation v. Mirich* (1980), Ind. App., 404 N.E.2d 38; *Gonderman v. State Exchange Bank, Roann* (1975), 166 Ind. App. 181, 334 N.E.2d 724; *Plumley v. Stanelle* (1974), 160 Ind.App. 271, 311 N.E.2d 626; *Soft Water Utilities, Inc. v. LeFevre* (1974), 159 Ind.App. 529, 308 N.E.2d 395; *Grissom v. Moran* (1972), 154 Ind.App. 419, 290 N.E.2d 119; *Middelkamp v. Hanewich* (1970), 147 Ind.App. 561, 263 N.E.2d 189."

The trial court found the misrepresentation element established by Skinner's statement to Braun in March or April 1977 that if Braun would loan money to Ampar he would be entitled to repayment ahead of the bank if Ampar should fail (LIFO). The bank contends that this statement cannot support an action in fraud because it does not concern a past or existing fact. It is instead either a statement of law [2] or merely a promise looking towards future conduct. Braun contends, alternatively, that Indiana recognizes circumstances in which a representation about a future event can be a present act or that Indiana law ought to be changed to conform to the majority rule which recognizes this possibility.

The general rule is that fraud must relate to a present or pre-existing fact and it cannot be predicated upon matters of futurity or promises to be performed at some later time. *See* 37 Am.Jur.2d, *Fraud & Deceit* Sections 57–65. However, many jurisdictions now subscribe to the view that a statement of present intent is factual and if deliberately falsified will support an action. This view is exemplified by Restatement (Second) of Torts, Section 530, which states:

"530. Misrepresentation of Intention

(1) A representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention."

In the comments that accompany this section, the American Law Institute says:

"The state of a man's mind is as much a fact as the state of his digestion. A false representation of the actor's own intention to do or not to do a particular thing is actionable if the statement is reasonably to be interpreted as expressing a firm intention and not merely as one of those 'puffing' statements which are so frequent and so little regarded in negotiations for a business transaction as to make it unjustifiable for the recipient to rely upon them."

Comment a.

"[T]he rule stated in this Section finds common application when the maker misrepresents his intention to perform an agreement made with the recipient. The intention to perform the agreement may be expressed but it is normally merely to be implied from the making of the agreement. Since a promise necessarily carries with it the implied assertion of an intention to perform it follows that a promise made without such an intention is fraudulent and actionable ... This is true whether or not the promise is enforceable as a contract. If it is enforceable, the person misled by the representation has a cause of action in tort as an alternative at least, and perhaps in some instances in addition to his cause of action on the contract. If the agreement is not enforceable as a contract, as when it is without consideration, the recipient still has, as his only remedy, the action in deceit ... The same is true when the agreement is oral and made unenforcea-

---

**2.** A misrepresentation of law will not satisfy the requirement. *Plymale, supra,* 419 N.E.2d at 763–764.

ble by the statute of frauds, or when it is unprovable and so unenforceable under the parol evidence rule."

Comment c.

The underlying rationale for this approach is that the harm resulting from one's reliance on a fraudulent misrepresentation about an intention to do a future act is no less real than that which results from reliance on the supposed existence of a present or past fact.

Those jurisdictions rejecting this view appear to adhere to the traditional analysis that promises and representations as to the future should be regarded merely as statements of opinion, hope or expectation upon which a party has no legal right to rely;[3] that such statements as to a future event cannot by their very nature be false when made. In addition these courts point out that if an intention not to perform constituted fraud, every transaction might be avoided as long as the facts would support an inference that a party did not intend to pay the consideration or keep his agreement. Such a result could seriously impair operation of the Statute of Frauds. See, e.g., Annot., 51 A.L.R. 46 at 50–52, 80–81.

An examination of Indiana case law demonstrates that this state follows the more conservative view. The leading case from our Supreme Court is Sachs v. Blewett (1933), 206 Ind. 151, 185 N.E. 856, reh. den. 188 N.E. 674. In that case the successful bidder at an auction refused to honor his commitment, requiring the plaintiff-seller to resell at a lower price. The plaintiff alleged that the defendants' bid was fraudulently made in that they had no intention of complying with it and that it was made for the purpose of preventing the sale of the property. In the course of reversing the trial court's overruling of defendants' demurrer to the complaint, the Supreme Court said:

"If the complaint can be upheld, it must be upon the theory that where a

contract is entered into with the intention of not carrying it out, an action will lie in tort for fraud because of the intention not to carry out the contract, independent of and in addition to any action that may lie upon the contract or for its breach." 206 Ind. at 155, 185 N.E. 856.

Braun urges that other Indiana cases have not followed the strict rule of Sachs or have found exceptions to it. We first note that while such decisions exist, most were decided prior to Sachs and to the extent that they conflict with the Sachs holding they must be deemed overruled by implication. See, e.g., Rochester Bridge Co. v. McNeill (1919), 188 Ind. 432, 122 N.E. 662; Basye v. Basye (1899), 152 Ind. 172, 52 N.E. 797; Godwin v. DeMotte (1917), 64 Ind.App. 394, 116 N.E. 17.

The Sachs court distinguished Basye and Webster v. Adams (1923), 79 Ind.App. 261, 137 N.E. 883 on the grounds that they were actions in equity to set aside a conveyance and were concerned with the breach of a relationship of special trust and confidence.[4]

One post-Sachs decision of our Supreme Court does cite with approval the statement from Rochester Bridge Co. that "[t]he mere fact that a statement takes the form of an expression of opinion is not always conclusive ...." Automobile Underwriters Inc. v. Rich (1944), 222 Ind. 384, 391, 53 N.E.2d 775. However, this case makes no reference to Sachs, used the reference only in dealing with the overruling of a demurrer, and reversed a judgment for plaintiff on the merits because there were no misrepresentations of fact shown in evidence.

■ We believe there is considerable merit in the position taken in the RESTATEMENT. Nevertheless, there are valid considerations supporting the traditional view and we are bound by our Supreme Court's ruling in Sachs. If we are to adopt the view embraced by the RESTATEMENT, Sachs must be overruled on this point and the change

---

3. Extended, this view maintains that under such circumstances the parties desiring to rely, or mutually rely, should enter an enforceable contract.

4. Our opinion examines this "exception" in the next section.

must come from the Supreme Court. We conclude, therefore, that neither the findings nor the underlying evidence sustains a judgment for fraud.

The trial court also found in its conclusions, however, that the acts of Daniel Skinner while employed as vice president and loan officer of the bank were the acts of the bank; that the bank had "a special fiduciary duty and obligation" to plaintiff Braun; and that the acts of the bank:

"... in refusing to honor Vice President Skinner's 'last in, first out' representations to Victor Braun; in failing to inform the Plaintiff of the serious financial condition of Ampar, Inc. in May, June, and July of 1978; in accepting Plaintiff's money and applying it against pre-existing indebtedness of Peoples Trust; and in failing to inform Victor Braun that Richard Davies had been made chief operating officer of Ampar, Inc., at the Bank's insistence, were acts of bad faith on the part of Peoples Trust Bank, calculated to defraud Plaintiff out of monies due and owing to him by Ampar, Inc., and to induce Plaintiff to continue loaning money to the Corporation."

■ Where a relationship of trust and confidence exists between parties, equity will act to protect it and to prevent the party owing the duty from profiting by its breach. *Basye v. Basye, supra.*

The general rule appears to be that the mere existence of a relationship between parties of bank and customer or depositor does not create a special relationship of trust and confidence. *See* Annot., 70 A.L. R.3D 1344. On the other hand where *the facts* necessary to such a relationship exist, Indiana has imposed a fiduciary obligation involving a bank. *Earl Park State Bank v. Lowmon* (1928), 92 Ind.App. 25, 161 N.E. 675.

In *Hunter v. Hunter* (1972), 152 Ind.App. 365, 283 N.E.2d 775, 779 the court reviewed the factors necessary to establish a confidential relationship:

"Although the existence of a confidential relationship depends upon the facts of each case, it can be generally stated that a confidential relationship exists whenever confidence is reposed by one party in another with resulting superiority and influence exercised by the other. *Shapiro v. Rubens* (7th Cir.1948), 166 F.2d 659. Not only must there be confidence by one party in the other, the party reposing the confidence must also be in a position of inequality, dependence, weakness, or lack of knowledge. *Koenig v. Leas* [240 Ind. 449, 165 N.E.2d 134 (1959)], *supra; Koehler v. Haller* (1915), 62 Ind.App. 8, 112 N.E. 527. Furthermore, it must be shown that the dominant party wrongfully abused this confidence by improperly influencing the weaker so as to obtain an unconscionable advantage."

■ It is at this juncture that the bank's argument concerning the adequacy of the special findings of fact comes to bear. Although the court entered as a conclusion that a confidential relationship between Braun and the bank existed, the special findings are inadequate to disclose the existence of the elements necessary to such a conclusion. Moreover, our rules of procedure do not permit us to resolve any deficiencies in the findings by presumption. Indiana Rules of Procedure, Trial Rule 52(D). The findings fail to disclose a basis for the conclusion that a confidential relationship existed between Braun and Skinner specifically or the bank generally. Moreover, from the findings entered we are unable to determine whether the bank's liability is predicated upon *respondeat superior* for Skinner's actions or upon some other basis. If the former, the findings fail to disclose that Skinner was acting within the scope of his authority. They fail to disclose a basis for the court's determination of liability for the nearly $100,000 loaned by Braun in 1978, approximately a year after Skinner's representation concerning LIFO. If the basis for liability arose from other conduct on the part of the bank's officers and agents we are unable to say with any certainty what acts served as a basis for what liability and how they constituted a breach of duty by the bank.

It follows that we must reverse the judgment against Skinner and the bank and remand for further proceedings.

Reversed.

HOFFMAN, P.J., and STATON, J., concur.